J-A04040-24

2024 PA Super 75

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HEATHER A. DUNCAN | : | |
| | : | |
| Appellant | : | No. 1103 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 10, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007608-2021

BEFORE: STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                        **FILED APRIL 17, 2024**

Appellant, Heather A. Duncan, appeals the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County after she was found guilty of driving while under the combined influence of alcohol and a drug or a combination of drugs following a non-jury trial.[1]  She challenges the sufficiency and weight of the evidence, the lower court's grant of a Commonwealth request to amend the charge during trial, and the trial court's admission of evidence concerning a cigarette that the police never confiscated from the floor of her car.  After careful review, we vacate Appellant's conviction.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(d)(3).

Appellant's case was held over for trial on a single charge for driving under the influence ("DUI") of alcohol/general impairment.[2]  Trial Disposition and Dismissal Form, 8/30/21, 1; Bill of Information, printed 9/1/21, 1.  On June 28, 2022, she waived a jury and proceeded to be tried at a bifurcated bench trial.  N.T. 6/28/22, 4-5.  The Commonwealth's evidence consisted of testimony from Police Officer Veronika Tueros, footage from a body camera worn by Officer Tueros, and a copy of a First Judicial District secure court summary for Appellant.  The defense evidence included testimony from Appellant and her doctor, and stipulated testimony from Appellant's father.[3]

At 4:45 p.m. on May 20, 2021, Officer Tueros was on bike patrol duty with two partners in the 700 block of East Clearfield Street in Philadelphia when she heard yelling and honking at a car that was stopped at the intersection with Ridge Street with cars behind it as the traffic signal was green.  N.T. 11/2/22, 35-36.  She saw Appellant gripping the steering wheel while "having a blank stare straight forward."  *Id.* at 36.  After initially signaling with her hand to direct Appellant to move forward, Officer Tueros directed Appellant to put the car in park, turn it off, and exit the car.  *Id.* at 37-38.  Appellant was unable to comply with multiple commands to unlock the car.  *Id.* at 38-39.  Another officer, Officer Lopez, reached over a window and unlocked the car.  *Id.* at 39.

---

[2] 75 Pa.C.S. § 3802(a)(1).

[3] We note that the defense agreed to present its case prior to the Commonwealth's case-in-chief.  N.T. 6/28/22, 6.

Officer Tueros asked Appellant to come out of the car, but she remained still with a confused look. N.T. 11/2/22, 40. Officer Tueros saw that Appellant's eyes were red and "went from a wide eyes [sic] to squinty eyes." *Id.* at 43. The officers then helped her out of the car. *Id.* at 39-41. On the floor of the car, Officer Tueros saw a cigarette of which "half to the end of [it] was wet:"



Commonwealth Exhibit C-1, Officer Tueros's Body Worn Camera Footage, 5:06 (File "700_E_CLEARFIELD_ST_-_DUI-2"); N.T. 11/2/22, 42, 45-46, 53-54. Appellant had slurred speech when the officers were asking her for her name. *Id.* at 43. The officers were able to identify her after they retrieved her identification card from a purse in the car. *Id.* at 44.

When the Commonwealth asked Officer Tueros at trial about the significance of the cigarette being wet, Appellant's counsel objected on the

basis of spoliation because the police officers did not preserve the cigarette. N.T. 11/2/22, 45 (Defense counsel: "They did not preserve the cigerrretee [sic] they destroyed it … This is what you call spoliation."). The court permitted the officer to testify, over defense objections that the wetness of the cigarette was indicative of the presence of PCP, which the officer based on her experiences with drug arrests in the Kensington area of Philadelphia which the officer noted was an area with "very high illegal narcotic sales." *Id.* at 47-49. The court rejected defense objections to the evidence as speculative and irrelevant, and rejected a related mistrial request:

> Q. So in your experience, officer, have you ever encountered in your routine patrol or active duty, cigerettes [sic] in which a portion of the cigerrette [sic] is wet?
>
> [DEFENSE COUNSEL]: Objection, pure speculation.
>
> THE COURT: He hasn't asked her to speculate. He just asked. Overruled. Go ahead.
>
> [DEFENSE COUNSEL]: And irrelevant.
>
> THE COURT: Overruled.
>
> Q. So, being on the force, have you encountered cigerretes [sic] in which portions of the ciggerette [sic] were wet?
>
> A. Yes.
>
> Q. And what, if anything, what do you make of ciggerettes [sic] that are wet?
>
> A. They are dangerous. Well I concluded that it is PCP --
>
> [DEFENSE COUNSEL]: Objection. Move for a mistrial.

> THE COURT: Well, there is no ground for that. It's overruled. Continue.
>
> THE WITNESS: I immediately concluded that it's alleged PCP based on what I have seen during patrol, what I have seen during arrests.
>
> [DEFENSE COUNSEL]: Note my objection.

*Id.* at 48-49; *see also id.* at 71 (additional motion to exclude any reference to the cigarette following Officer Tueros' testimony). Officer Tueros described the non-filtered part of the cigarette as brown and noted that she separately found a smoking "vape" in the car. *Id.* at 50, 66.

No field sobriety tests were conducted at the scene prior to the police taking Appellant into custody. N.T. 11/2/22, 55-56. Officer Tueros testified that she did not retrieve the observed "wet" cigarette out of concern for her safety. *Id.* at 57 ("I did not for my safety."); *see also id.* at 71 ("Due to safety reasons. I was told not to touch PCP, alledged [sic]."). For the same reason, she confirmed that her fellow officers at the scene did not preserve the cigarette as evidence. *Id.* ("Q. Did you have one of your colleagues retrieve it or get a jar or a glove and preserve the evidence? A. They did not, for their safety."). Officer Tueros testified that she moved Appellant's car to a parking spot on the street and left the observed cigarette "in place." *Id.* at 60. The Commonwealth's evidence did not address any blood or chemical testing in connection with Appellant's arrest.

Appellant testified that she had a "[a] complete thyroidectomy" six days before her arrest. N.T. 6/28/22, 7-8. She also alleged that on the day before

the arrest she "was having side effects from the surgery" which included an inability to move her legs, a lack of feeling in her legs, and "some tingling in [her] body." *Id.* at 9. Afterwards, she went to have blood drawn at a division of Pennsylvania Hospital. *Id.* at 10. On the day of the arrest, Appellant went to Pennsylvania Hospital to see an orthopedist and receive a COVID-19 vaccination; she produced documentation reflecting that she was parked at the hospital from 10:51 a.m. to 12:55 p.m., instructions concerning the vaccine, and a vaccination card. *Id.* at 12-13.

Appellant testified that, after leaving the hospital garage, she went to a birthday lunch for her sister at a restaurant in the Secane area of Delaware County. N.T. 6/28/22, 13-14. She admitted to having "about half of one" bottle of beer at that party. *Id.* at 15. She also alleged that she had been put on a calcium regimen at that time because her medical testing proved that she "had pretty severe hypocalcemia." *Id.* at 16. She recalled that she left the restaurant "somewhere around 3:45" p.m. *Id.* at 18. From there, Appellant drove to a dollar store on Allegheny Avenue in the Port Richmond section of Philadelphia. *Id.* at 19. She also testified about wanting to retrieve tools that she had lent to a friend that lived "a block away on Silver Street" before she intended to return to her home in South Philadelphia. *Id.* at 19-20. She recalled driving to the area of her arrest on the way from the visit to the dollar store to retrieve her tools. *Id.* at 20, 36. She denied drinking any alcohol, other than what she drank at her sister's birthday lunch, and denied taking any drugs other than prescription drugs on the day at issue (as to her

prescriptions, she referred to her "thyroid medication" and "acid reflux pills" and her doctor recalled prescribing her calcium and Vitamin D supplements). *Id.* at 20-21, 23; N.T. 11/2/22, 20.

As to the police encounter, Appellant recalled "coming to the red light there," feeling "really funny … like a crazy feeling in the pit of [her] stomach," and experiencing her face tingling. N.T. 6/28/22, 21. She agreed that she remembered the officer telling her to pull her car over and put it in park, but she asserted that her next memory after that was her being in the back of a police wagon. *Id.* She also agreed that she had a vape on her person and used it to smoke nicotine. *Id.* at 22-23 ("I mean I wasn't supposed to be because I wasn't supposed to be smoking at all, but I did have a vape on me and lightly smoking it because of the surgical procedure.").

Counsel stipulated that Appellant's father would testify that: he was at the birthday lunch with Appellant; Appellant seemed "not normal" then; she "ate something, not much;" she had "the affects of her operation, the bandages;" he observed her order a bottle of beer, "of which she drank some of it;" she left the restaurant to go back to Philadelphia at around 3:45 p.m.; and that "although she was acting oddly, [Appellant] wasn't under the influence of anything [and] wasn't drinking." N.T. 6/28/22, 37-38.

Appellant also presented testimony from an endocrinologist, Dr. Caroline Kim, who had treated her before and after her thyroidectomy. N.T. 11/2/22, 12, 16, 19-20. Dr. Kim testified that "there [was] an issue of low calcium after that operation" and that Appellant developed hypocalcemia after

- 7 -

the surgery. *Id.* at 18-19. She noted that the more common symptoms of hypocalcemia "would be tingling around [a person's] fingers, around their mouth, some people have cramping in their legs, [and] severe hypocalcemi[a] can certainly affect their vascular system." *Id.* at 19.

After the Commonwealth finished presenting its case-in-chief, defense counsel renewed his objection as to the references to the cigarette in Appellant's car and the suggestion that "it might have some sort of narcotic or PCP or something like that on it" because the cigarette was never preserved and thus could not be tested. N.T. 11/2/22, 77-80. The court rejected the objection due to a lack of showing that bad faith resulted in the failure to preserve the cigarette. *Id.* at 80 ("THE COURT: Okay. So on the spoliation. Although I am not convinced that this makes any difference because we have a video of the alleged PCP cigerrete [sic], but there is no evidence of bad faith by the police because the car was parked legally.").

During the discussion of the defense objection to the wet cigarette evidence, the trial court asked the Commonwealth for its theory for the prosecution and the Commonwealth proceeded to make a motion to amend the charge to add a separate count of DUI under 75 Pa.C.S. § 3802(d)(3). N.T. 11/2/22, 82-83, 88. Appellant's counsel objected. *Id.* at 83, 88 ("I would object to an amendment at this, at this late date. … This is way too late to amend without proper notice. We tried this case."). The court granted the amendment request because it found no prejudice to the defense. *Id.* at 89 (THE COURT: … I find that there is no prejudice to the defense, because I

mean, this conforms with the evidence. It is consistent with the evidence that the defense put on. And the issues in this case were kind of well telegraphed to both sides.").[4] Immediately after granting the amendment, the court announced its verdict, convicting Appellant of the amended misdemeanor charge under 75 Pa.C.S. § 3802(d)(3), and finding her not guilty of the felony general impairment charge under 75 Pa.C.S. § 3802(a)(1). N.T. 11/2/22, 89; Trial Disposition and Dismissal Form, 11/2/22, 1.

Appellant made a post-verdict motion for extraordinary relief asserting that the trial court violated her state and federal due process rights by allowing the Commonwealth to amend the bill of information to include the charge under Section 3802(d)(3). Motion for Extraordinary Relief Brief, 2/24/23, 1-13. In response to Appellant's arguments that the amendment caused prejudice by materially changing the crime and facts at issue and affecting the defense's strategy, the trial court denied the motion as follows:

_____

[4] The reference to a controlled substance issue being "well telegraphed" appeared to be a reference to the fact that the prosecutor at the end of the first day of the bifurcated trial (who was a different attorney from the prosecutor who resumed the trial on a subsequent date) stated an intent to prosecute based on a theory of PCP use. *See* N.T. 6/28/22, 41 ("The Commonwealth's theory of the case is that the defendant was driving under the influence of PCP."); *id.* at 46 ("The theory would be that the defendant was under the influence of PCP given the cigarette, which the officer would likely testify appeared wet at the end. And based on her training and experience, what that experience is, is PCP has a very specific smell."). Appellant's counsel responded that he would object to the testimony about the cigarette due to spoliation. *Id.* ("I would object to that because if you spoil the evidence, you can't use it.").

These arguments lack merit. First, [Appellant] suffered no prejudice. [Appellant's] counsel knew about the wet-tipped cigarette before trial. At the preliminary hearing, Officer Tueros testified she saw a cigarette that had been dipped in what looked like PCP connected to a plastic pipe in [Appellant's] car. Defense counsel objected on the ground that Officer Tueros was speculating about the PCP, and the objection was sustained. Officer Tueros then testified she believed the pipe was used for narcotics. Defense counsel objected again, and the objection was sustained. The Commonwealth offered no other evidence of impairment by drug or alcohol at the [p]reliminary [h]earing.

Defense counsel of course knew the Municipal Court's rulings on the scope of the arresting officer's testimony would not bind the Court of Common Pleas. Defense counsel also knew from the [p]reliminary hearing that the arresting officer would testify the discolored and moist cigarette tip indicated the presence of PCP.

Armed with notice of the government's theory of prosecution from the preliminary hearing, defense counsel at trial objected to evidence of the wet-tipped cigarette. He sought to exclude evidence both during Officer Tueros's direct examination and at the close of the Commonwealth's case-in-chief. I overruled the objections. Defense counsel also argued in closing that the evidence of impairment by PCP was insufficient. In short, defense counsel knew the Commonwealth would rely on the wet-tipped cigarette at trial and sought to downplay its weight. The court infers from these circumstances that [Appellant] did not call an expert for strategic reasons and not because the defense was blindsided. The timing of the amendment did not prejudice the defense.

That this was a bench trial, and not a jury trial, also informs the issue. The change to the elements of proof was minor. The court could adapt as the finder of fact without confusion.

Finally, [Appellant's] argument that the court improperly worked with the [Assistant District Attorney] to amend the bill to conform to the evidence obfuscates the issue. The question is prejudice. For the reasons set forth above, at this bench trial, there was none.

Order, 3/24/23, 6-7 (caselaw and record citations omitted).

- 10 -

On April 10, 2023, the court sentenced Appellant to a mandatory-minimum imprisonment term of one to two years, to be followed by three years' probation. N.T. 4/10/23, 3-5, 20; Sentencing Order, 4/10/23, 1; *see* 75 Pa.C.S. § 3804(c)(3)(i) (requiring an individual who violates Section 3802(d) to "undergo imprisonment of not less than one year" for a third or subsequent DUI offense). Appellant timely filed a post-sentence motion, challenging the sufficiency and weight of the evidence, asserting that the trial court erred by not striking the testimony about the cigarette on the floor of her car, alleging that the trial court violated her due process rights by allowing the amendment of the bill of information during the trial, and asking for a grant of bail pending appeal. Post-Sentence Motion, 4/18/23, 6-11. After the denial of the motion, Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Order Denying Post-Sentence Motion, 4/24/23, 1; Notice of Appeal, 4/26/23, 1-2; Rule 1925(a) Order, 4/28/23, 1; Rule 1925(b) Statement, 5/2/23, 1-11.

Appellant presents the following questions for our review:[5]

1)     Was the conviction of driving under the influence of a combination of alcohol and drugs (75 [Pa.C.S. § 3802(d)(3)]) not supported by sufficient evidence since the evidence only showed she drank a half bottle of beer and there was no evidence to support the police officer's speculation that there was PCP due to an alleged brownish color on a cigarette when the cigarette was never tested and the police never collected the cigarette for evidence but left

_____

[5] We have reordered Appellant's issues for ease of disposition.

- 11 -

it at the scene? Was the verdict based on pure speculation and conjecture? Did the evidence show that [Appellant] had not used any drugs that day but was suffering from hypoglycemia caused by low calcium levels after her thyroid operation?

2) Did [the trial court] err and violate due process under the Fourteenth Amendment of the United States Constitution and related provisions of the Pennsylvania Constitution and Pennsylvania Rule[ ] of Criminal Procedure [ ] 564, by allowing the Commonwealth to amend the [b]ill of [i]nformation charging 75 [Pa.C.S. §] 3802(a)(1) of general impairment with alcohol to add 75 [Pa.C.S. §] 3802(d)(3) involving unsafe driving involving a combination of alcohol and drugs after all the evidence had been presented and [trial counsel] had made his closing argument, thereby unfairly and severely prejudicing [Appellant] by the extremely late and untimely amendment? Was this extremely late amendment highly prejudicial to [Appellant] since [trial counsel] tried the case based only on the charge of alcohol impairment which was the only charge at issue until the late amendment after [trial counsel's] closing speech?

3) Was the conviction of driving under the influence of alcohol and drugs (75 [Pa.C.S. § 3802(d)(3)]) against the weight of the evidence? Should this conviction shock the conscience of this Honorable Court since there was no evidence of any drugs, only evidence of a half bottle of beer and the charge of 75 [Pa.C.S. § 3802(d)(3)] was only added after all evidence was presented and after the defense gave their closing speech? Was the verdict based on speculation and conjecture?

4) Did [the trial court] err in not striking the testimony by the police officer about the cigarette found on the car floor and the speculation that it could be PCP due to an alleged brownish color since the police and the Commonwealth never tested the cigarette and in fact, never collected the cigarette or placed it into evidence but instead, left the cigarette at the scene to be destroyed? As a result, was the police officer's testimony about a PCP cigarette pure conjecture and speculation? Did the Commonwealth err in destroying the evidence of the cigarette and therefore,

should the Commonwealth be prohibited from testifying about the untested and destroyed cigarette?

Appellant's Brief at 8-11 (omitting repeated summaries of the verdicts).

First, we address Appellant's sufficiency issue. She argues that the evidence was insufficient because there was no evidence of "any drug use," any blood or alcohol testing of her, and any sobriety testing of her. Appellant's Brief at 61-68. She attributes her intoxicated state to "a hypoglycemia type of situation" due to a lack of calcium in the week following a thyroid surgery amid her receipt of a COVID-19 vaccine shot on the day of her DUI arrest. *Id.* at 63-64. As for the observed cigarette on the car floor, she repeats her arguments from below that the conclusion that the cigarette was indicative of PCP use was speculative and based on conjecture where the police never preserved the cigarette or had it tested. *Id.* at 65-66; *see also id.* at 67 ("there is no evidence of drugs involved in this case other than naked conjecture and speculation.").

The Commonwealth adopts portions of the trial court's opinion to demonstrate that there was "significant corroborative evidence that [Appellant] was high on PCP at the time of the arrest" and that Appellant's "symptoms" at the time of the arrest were not likely to be attributed to a calcium deficiency as Appellant suggests. Appellee's Brief at 12-13. As for the evidence of PCP intoxication, the Commonwealth reproduces the following portion of the trial court's opinion:

Officer Tueros saw a wet-tipped cigarette in [Appellant]'s car after she pulled [Appellant] from the SUV at the green light. PCP abusers inhale PCP by smoking cigarettes dipped in PCP fluid.

These explanations for [Appellant]'s impairment are consistent with the location of her arrest in Kensington, a high [drug] traffic area. She had been at a birthday party in Delaware County where she drank beer. She lived in South Philadelphia. She drove past her home after the party to get to Kensington, a high drug traffic area.

[Appellant] offered a non-credible and uncorroborated alibi. She testified that she went to Kensington to retrieve tools from a friend. She did not name her friend or give the location where they met. This self-serving testimony did not ring true.

…

The expert testimony from Dr. Kim also did not mesh with the facts. [Appellant] had successfully driven to her medical appointment earlier in the day. She then successfully drove to a birthday party in Delaware County. She would not have been able to make these stops if hypocalcemia had impaired her driving. She only became impaired in Kensington, a high drug traffic area. Common sense dictates [Appellant's] impairment stemmed from a combination of alcohol from the party and a controlled substance she obtained in Kensington.

Appellee's Brief at 12, citing Trial Court's Opinion, 6/30/23, 5-6 (record citations omitted; reformatted with paragraph breaks as in the trial court's opinion).

Our standard of review for a challenge to the sufficiency is well-settled:

We must determine whether the evidence at trial, and all reasonable inferences drawn thereform, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficient of the evidence claim must fail.

- 14 -

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless it is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mobley*, 14 A.3d 887, 889-90 (Pa. Super. 2011), *quoting Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa. Super. 2010) (internal quotations and citations omitted). Moreover, "[i]it is well recognized … that a criminal conviction cannot be based upon mere speculation and conjecture." *Commonwealth v. Jarman*, 601 A.2d 1229, 1231 (Pa. 1992).

The legal question that needs to be resolved for the instant claim is whether the evidence was sufficient to support that Appellant's impairment was caused by "the combined influence of alcohol and a drug or [a] combination of drugs." 75 Pa.C.S. § 3802(d)(3). Here, the parties are not contesting Appellant's state of impairment, that she had at least some alcohol on the day in question, or that she was incapable of safely driving. Instead, they contest what the evidence proved was the cause of her impairment and whether controlled substance use contributed to it. Appellant relies on her defense evidence to maintain that she was impaired because of a hypoglycemic medical event. Appellant's Brief at 64. The Commonwealth, relying on the trial court's analysis, asserts that the evidence was sufficient "[b]ecause there was evidence that [Appellant] consumed alcohol and that

she was high on PCP." Appellee's Brief at 10. Officer Tueros's observation of the unrecovered cigarette in the entryway of Appellant's car and Appellant's presence in an area known for drug trafficking are the only evidence addressed as proof of Appellant's use of a drug that contributed to her impairment.

The relevant provision of the DUI statute that Appellant was convicted of violating provides as follows:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances: … The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(d)(3). To sustain the DUI conviction under subsection (d)(3), the Commonwealth was required to prove beyond a reasonable doubt that: (1) Appellant was impaired; (2) Appellant was incapable of safely driving; and (3) Appellant's impairment was caused by the combined influence of alcohol and a drug or combination of drugs. *See Commonwealth v. Graham*, 81 A.3d 137, 146 n.6 (Pa. Super. 2013).

The text of subsection (d)(3) does not require the blood testing of a defendant to establish the causation of impairment element. *See Commonwealth v. DiPanfilo*, 993 A.2d 1262, 1268 n.6 (Pa. Super. 2010) (noting subsections (d)(2) and (d)(3) of Section 3802 "contain no language requiring that impairment be established through blood tests"). Moreover, with respect to the statute's (d)(2) subsection involving impairment due to "a

- 16 -

drug or combination of drugs," our Supreme Court has held that expert testimony is not mandatory in all prosecutions for driving under the influence of a drug to prove that the amount of a controlled substance found in a defendant's blood or urine caused driving impairment. ***Commonwealth v. Griffith***, 32 A.3d 1231, 1238 (Pa. 2011); ***see also Graham***, 81 A.3d at 147 (applying ***Griffith*** in a case addressing the sufficiency of the evidence for a DUI conviction under subsection (d)(3)).

While blood testing of Appellant was not required pursuant to Section 3802(d)(3), the Commonwealth still needed to prove beyond a reasonable doubt that Appellant was driving while under the influence of a drug that contributed to the impairment of her ability to safely drive. In the absence of any apparent request for blood testing of Appellant or any admission to her ingestion of a drug that would have contributed to her impairment, the Commonwealth could have proven the causation of the impairment by circumstantial evidence. ***See Commonwealth v. Olsen***, 82 A.3d 1041, 1046 (Pa. Super. 2013). In this instance, the primary basis for the impairment causation was proffered to be the cigarette seen in the doorway of Appellant's car. Viewing the evidence in the light most favorable to the Commonwealth, we are unable to conclude that the combined observation of the cigarette in the doorway of Appellant's car and Appellant's presence in an area known for drug trafficking was sufficient evidence that Appellant's impairment was caused at least in part by a single drug.

The observed cigarette was never recovered and thus it was never subjected to testing that could have shown whether it contained any drugs that could have caused Appellant's impairment. Officer Tueros described in her testimony that "half to the end of the cigarette was wet." N.T. 11/2/22, 42; *see also id.* at 45-46. She testified that she concluded the cigarette was alleged PCP "based on what [she had] seen during patrol, what [she had] seen during arrests." *Id.* at 49. She further indicated that the tobacco portion of the cigarette was the half that was wet, it was unlit, and that the "white paper" half was brown. *Id.* at 49-50. Despite these assertions, the Commonwealth never elicited testimony from the officer providing for her reasoning for how she concluded that the cigarette contained PCP or why any wetness or coloring of the cigarette was indicative of the presence of PCP or any drug for that matter. The Commonwealth also never elicited any testimony from Officer Tueros to show whether any of the signs of Appellant's impairment were indicative of drug use. On top of everything else, there was no proffer that Officer Tueros was an expert in the field of drug recognition.[6]

The Commonwealth is entitled to all reasonable inferences from the evidence presented and we are to review the evidence in the light most favorable to the Commonwealth as the verdict winner, but it strains credulity to conclude that a factfinder could accept that a non-expert can detect PCP in

---

[6] The officer acknowledged that she did not conduct any field sobriety test on Appellant and that she was "not trained for that." N.T. 11/2/22, 55.

a cigarette merely by observing its color and wetness. This Court, on the other hand, has held that evidence of an odor from a controlled substance is independent evidence of impairment that does not require expert testimony. *See Commonwealth v. Gause*, 164 A.3d 532, 538 (Pa. Super. 2017) (*en banc*) (holding evidence insufficient for a subsection 3802(d)(2) controlled substance DUI where there was no evidence of recent marijuana ingestion and, *inter alia*, there was no evidence of an odor of marijuana emanating from Gause's person or his vehicle).

In the context of drug possession cases, it is well settled that "the existence of narcotic drugs does not have to be proved by chemical analysis and may be proved either by direct or circumstantial evidence." *Commonwealth v. Williams*, 428 A.2d 165, 167 (Pa. Super. 1981). Indeed, this Court has explained that:

> the identity of illegal narcotic substances may be established by circumstantial evidence alone, without any chemical analysis of the seized contraband. Such a policy indicates that the courts will not, in cases involving the sale or use of illegal drugs, constrict their fact-finding function to the identity of drugs to a strict scientific analysis, but will rather permit the use of common sense and reasonable inferences in the determination of the identity of such substances.

*Commonwealth v. Minott*, 577 A.2d 928, 932 (Pa. Super. 1990) (citations omitted).

Testimony concerning an odor from the observed cigarette could have circumstantially proved the existence of PCP. *Compare Commonwealth v.*

*Galette*, 2020 WL 7398732, *6 (Pa. Super., filed Dec. 17, 2020) (finding sufficient evidence for subsection 3802(d)(2) DUI based on signs of impairment including glassy eyes, a "thousand-yard stare," slow and garbled speech, and where a police officer smelled a strong odor emanating from Gallette's person which the officer, upon receiving subsequent training, identified as PCP) (cited for its persuasive value pursuant to Pa.R.A.P. 126(b)(2)); *see also Commonwealth v. Hairston*, 2021 WL 1234790, *3-4 (Pa. Super., filed Mar. 31, 2021) (evidence sufficient for possession of PCP where Hairston engaged in a hand-to-hand exchange of cigarettes for cash with another man, two PCP cigarettes were recovered from the buyer, and the defendant threw a glass of liquid during his flight, and the arresting officer testified that he could smell the distinct odor of PCP emanating from the broken glass) (cited for its persuasive value pursuant to Pa.R.A.P. 126(b)(2)); *cf. DiPanfilo*, 993 A.2d at 1267 n.5 ("if a police officer stopped a driver who was driving erratically, and the driver then rolled down his window and greeted the officer through a cloud of marijuana smoke, showing the typical signs of heavy marijuana use, it would be difficult to imagine that expert testimony would be necessary to establish the link between the erratic driving and the driver's marijuana use.").

Here, the Commonwealth has not directed us to any testimony of an odor informing Officer Tueros's conclusion as to the presence of PCP and we cannot independently uncover any trial testimony concerning any odor

emanating from the observed cigarette.[7] To the extent that the officer's conclusions were only based on the observation of the color and perceived wetness of the cigarette, the element of the DUI conviction which required Appellant's impairment to be caused at least in part by a drug was based only on conjecture and speculation. In the absence of any additional factors or explanation in the trial testimony as to Officer Tueros's reasoning for her conclusion that the observed cigarette contained PCP, we are unable to find that there was sufficient evidence that Appellant's impairment was caused in part by PCP or any drug. The evidence, even viewed in the light most favorable to the Commonwealth, did not sustain the DUI conviction under subsection 3802(d)(3). *See Commonwealth v. Kelley*, 58 A.2d 375, 377 (Pa. Super. 1948) ("Conjecture is not a substitute for evidence and a conviction based thereon must be set aside.").

---

[7] In fairness to the Commonwealth, we must examine all evidence, regardless of admissibility, when determining sufficiency of the evidence claims because sufficiency of evidence is not assessed upon a diminished record. *Commonwealth v. Sanford*, 863 A.2d 428, 431-32 (Pa. 2004). In this case, the defense marked preliminary hearing notes of testimony for identification as Exhibit D-6 but never explicitly moved them into the evidentiary record. N.T. 6/28/22, 43 (marking of Exhibit D-6). Because those notes of testimony were never moved into the record, we cannot rely on their contents for purposes of our sufficiency review. *See Commonwealth v. Jones*, 271 A.3d 452, 456 (Pa. Super. 2021) (noting that "exhibits that are merely marked for identification and by the offering party do not constitute evidence on which a finder of fact can rely," but holding, on the other hand, that a video recording marked for identification and played to the trial finder of fact is admitted into evidence even if no formal motion is made for its admission).

We further note that the trial court's reliance – and the Commonwealth's indirect reliance – on Appellant's presence in a "high drug trafficking area" as a substitute for the total lack of proof that Appellant was under the influence of a drug at the time of her impairment is immaterial for purposes of our sufficiency review. The suggestion that the observed cigarette must have contained PCP based only on Appellant's presence in an area known for drug trafficking emphasizes the degree to which the verdict here was based purely on conjecture. Accordingly, we vacate Appellant's conviction for driving under the influence of alcohol and a drug or combination of drugs.[8]

Conviction vacated. Judgment of sentence vacated. Jurisdiction relinquished.

Judge Stabile joins the Opinion.

Judge McLaughlin files a Dissenting Opinion.

---

[8] In light of our disposition, we decline to address Appellant's remaining challenges to the grant of the Commonwealth's request to amend the DUI charge, the weight of the evidence, and the rejection of the evidentiary admission objections concerning the cigarette found on the floor of Appellant's car.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/17/2024