J-A13035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| CLINTON MILLER | : | |
| Appellant | : | No. 903 WDA 2023 |

Appeal from the Judgment of Sentence Entered June 5, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0007101-2021

BEFORE:  OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: JULY 11, 2024**

Clinton Miller (Appellant) appeals from the judgment of sentence imposed after the Honorable Anthony M. Mariani convicted him of third-degree murder and firearms not to be carried without a license.  Appellant asserts the trial court erred by denying his claim of imperfect self-defense.  He also maintains that the court imposed a manifestly excessive sentence.  After careful review, we affirm.

The trial court set forth the facts of his matter as follows:

On May 27, 2021, ShotSpotter reported five shots fired at 705 East Warrington Avenue in the [c]ity of Pittsburgh.  Pittsburgh Bureau of Police Officer Deminica Lewin responded to the dispatch and arrived at the scene in less than one minute.  Upon her arrival, Officer Lewin observed a young male slumped over on a bicycle that was leaning against a wall.  The young male was bleeding from his head and there was a substantial amount of blood on the wall.  Multiple bystanders were on the scene and were applying pressure to the victim's head wound.  While moving the young male to the ground, Officer Lewin discovered a revolver in his front, left waistband.  The barrel of the revolver was facing down.

Officer Lewin cleared and then placed the revolver into her police vehicle. The young male was identified as Izeyah Clancy ["the victim"] and he was transported to UPMC Mercy Hospital where he was later pronounced dead.

The Allegheny County Office of the Medical Examiner determined [the victim] died as a result of a penetrating gunshot wound of the head. [The victim] also suffered a graze gunshot wound to the left upper extremity. Additionally, a mildly deformed bullet was recovered from [the victim]'s left superior-anterior parietal skull.

Pittsburgh Bureau of Police Detective Robert Provident arrived at the scene and found the scene to be taped off and secured by other police officers. Detective Provident assisted in the recovery of a fired bullet laying in a pool of blood on the sidewalk outside A+ Childcare Center. Two bullet holes were located in the glass of the building of A+ Childcare Center. Surveillance video was recovered from the A+ Childcare Center and Adan's Market[,] and the video disclosed that [Appellant] shot the victim in the back of the head, while the victim was sitting on his bicycle, unaware that [Appellant] pulled out a gun and aimed it at the back of the victim's head.

Video recovered from A+ Childcare at 705 E. Warrington Avenue revealed that [the victim] was shot by [Appellant]. One angle of the video disclosed an individual wearing a "Batman" hooded sweatshirt coming into view at time stamp 21:17:08. [The victim] appears riding a bike at 21:20:13, exits off screen at 21:20:32, then reappears at 21:20:59. [The victim] then gets back on his bike at 21:21:02.

Video from Adan's Market disclosed [Appellant] entering Adan's Market at 21:26:13. [The victim] then enters Adan's Market at 21:29:19. [Appellant] exits the market at 21:29:21[,] and the victim exits at 21:29:33. Gun shots were then fired in the area.

On June 14, 2021, Officer Frank Niemiec identified [Appellant] in the security video from Adan's Market. Additionally, Johnathan Hicks and Robert Campbell, two staff members from the school [Appellant] attended, were able to identify [Appellant] as the person wearing the black hooded "Batman" sweatshirt in the video.

In June of 2021, United States Marshal Task Force Officer and Pittsburgh Police Detective Joseph Novakowski arrested

[Appellant] at his residence. During a protective sweep of the residence, a revolver was located on the couch. While being interviewed, [Appellant] confirmed he was at the scene of the shooting and that he was the person in the "Batman" hoodie. [Appellant] was not licensed to carry a firearm.

[Appellant] testified on direct examination that he and [the victim] had a prior dispute[,] and [Appellant] thought [the victim] wanted to talk it out or "squash it." [Appellant] testified on cross-examination that he shot [the victim] while he was facing away from him, in the back of the head, and continued to fire. [Appellant] also testified that he told Detective Fallert that he did not know [the victim] and that he did not know if [the victim] had a gun. [Appellant] testified he told Detective Fallert twice that he had no reason to shoot [the victim].

Trial Court Opinion (TCO), 10/19/23, at 1-3.

Following a bench trial, Appellant was convicted of one count each of Murder in the Third Degree (18 Pa.C.S. § 2502(c)), Firearms not to be Carried Without a License (18 Pa.C.S. § 6106(a)(1)), and Possession of Firearm Prohibited (18 Pa.C.S. § 6105(a)(1)). The trial court sentenced Appellant to an aggregate term of twenty-three and one half (23.5) to forty-seven (47) years of incarceration. Appellant, represented by new counsel, filed a timely post-sentence motion alleging that the guilty verdict was contrary to the weight of the evidence, and that the sentence was unduly harsh. Post-Sentence Motion, 6/14/23. The Commonwealth filed a responsive answer to the motion, and the trial court denied it the next day. Commonwealth's Answer, 7/9/23; Order Denying Post-Sentence Motion, 7/10/23. This timely appeal followed. Notice of Appeal, 8/7/23. As both the Appellant and the trial court have complied with Pa.R.A.P. 1925, we turn to Appellant's issues.

Appellant raises the following questions in this appeal:

I.     Did the trial court err in determing [*sic*] that the Commonwealth had presented sufficient evidence to prove malice, beyond a reasonable doubt, to support [Appellant's] conviction for third-degree murder?

II.     Did the trial court abuse its discretion by imposing an unreasonable and unduly harsh term of 23.5 to 47 years' imprisonment, where [Appellant] was 18 years old at the time of the offense?

Brief for Appellant at 5.

Appellant's first issue mirrors the first issue stated in his concise statement of errors complained of on appeal, asserting that the trial court erred when it found sufficient evidence for his third-degree murder conviction because the Commonwealth had failed to establish malice. **See** Statement of Errors, 9/4/23, at 2. However, Appellant frames his first issue at the start of the Argument section of the brief as follows: "The trial court erred in determining that the Commonwealth presented sufficient evidence to disprove imperfect self-defense beyond a reasonable doubt." Brief for Appellant at 23. Importantly, in his concise statement Appellant never claimed he was entitled to application of the doctrine of imperfect self-defense.

It is well-established that the malice element in a homicide case is rebutted when the evidence shows that a defendant acted in either self-defense or "imperfect" self-defense—that is, he used deadly force with the belief, however unreasonable, that it was immediately necessary to protect himself against death or serious bodily injury. 18 Pa.C.S. § 505(a); **Commonwealth v. Hart**, 565 A.2d 1212, 1217 (Pa. Super. 1989). A successful claim of imperfect self-defense acts to reduce murder to voluntary

manslaughter. 18 Pa.C.S. § 2503(b); **Commonwealth v. Rivera**, 108 A.3d 779, 787 n.2 (Pa. 2014).

Further, once the issue is properly raised by a criminal defendant, the Commonwealth has the burden to set forth sufficient evidence to rebut a defendant's self-defense claim. **Commonwealth v. McClendon**, 874 A.2d 1223, 1229-30 (Pa. Super. 2005). Our Supreme Court has explained:

> The Commonwealth sustains its burden [of disproving self-defense] if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the slayer violated a duty to retreat or avoid the danger.

**Commonwealth v. Sepulveda**, 55 A.3d 1108, 1124 (Pa. 2012).

Here, Appellant argues that because the Commonwealth failed to disprove the doctrine of "imperfect self-defense," malice has not been established. **See, e.g.**, **Commonwealth v. Green**, 273 A.3d 1080, 1085 (Pa. Super. 2022), *appeal denied*, 289 A.3d 522 (Pa. 2022) ("Where [Appellant] has introduced evidence of self-defense, the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt[.]"). Thus, he concludes, the third-degree murder conviction cannot stand.

In a footnote, Appellant notes that the trial court did not address imperfect self-defense in its Rule 1925(a) opinion. Brief for Appellant at 26 n.2. Appellant is correct, the doctrine is not discussed in the trial court's Rule

1925(a) opinion, but we observe that the reason for this omission is that the concise statement did not raise the issue of imperfect self-defense. When an appellant litigates a claim of insufficient evidence, the Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient. **Commonwealth v. Williams**, 959 A.2d 1252, 1257 (Pa. Super. 2008). As the Rule further provides, "The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). Moreover, as noted above, the failure to include an issue in the statement of errors will result in waiver. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived."). The Commonwealth's failure to argue waiver, along with the fact that we have a trial court opinion addressing the issue of malice, is of no moment because Pa.R.A.P. 1925 must be applied in a predictable, uniform manner. **Williams**, *supra*.

Due to this discrepancy between the imperfect self-defense argument in Appellant's brief and the issue raised in the statement of errors, we must conclude that this issue has been waived. **See, e.g.**, **Commonwealth v. Garland**, 63 A.3d 339, 342 (Pa. Super. 2013); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Moreover, even if the issue had been properly preserved for appeal, we would conclude that it is without merit.[1] We note that a defense of "imperfect self-defense" exists "where [Appellant] actually, but unreasonably, believed that deadly force was necessary." **Commonwealth v. Truong**, 36 A.3d 592, 599 (Pa. Super. 2021). Appellant argues that "the important evidence in this case" was that Appellant believed, albeit unreasonably, that the victim was going to kill him if he did not shoot the victim first. Brief for Appellant at 26. Appellant maintains he did not provoke the incident and could not have retreated safely from it. **Id.** Thus, Appellant asserts he was entitled to the application of imperfect self-defense to his case. **Id**. at 27. He concludes: "[Applying the doctrine of imperfect self-defense] would have negated malice and rendered the evidence insufficient to convict him of third-degree murder." **Id**.

After reviewing the certified record, we reflect that the only evidence about whether the use of force was necessary for Appellant to defend himself was Appellant's self-serving testimony that he was scared, and that the victim

_____

[1] The standard of review on this issue is well-settled:

> When reviewing a [sufficiency] claim, we face a question of law. Accordingly, our standard of review is de novo. We view the evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt.

**Commonwealth v. Roberts**, 293 A.3d 1221, 1223 (Pa. Super. 2023) (cleaned up), *appeal granted on other grounds*, 293 A.3d 1221 (Pa. 2023).

had his hand on his weapon in his waistband the entire time; Appellant also testified that the victim had threatened him. N.T., 3/6/23, at 94, 95, 97. Specifically, Appellant stated that as he left the store, the victim told Appellant that he was lucky that they were near the store because, if not, the victim would kill him. *Id.* at 95. As the fact-finder in this case, the trial court was free to disbelieve Appellant's testimony. ***Commonwealth v. Duncan***, 314 A.3d 556, 565 (Pa. Super. 2024) ("[T]he fact-finder is free to believe all, part, or none of the evidence presented."). Further, this Court will not re-weigh the evidence and substitute our judgment for that of the finder of fact. *Id.*

In contrast to Appellant's testimony, the Commonwealth introduced into evidence a compilation surveillance video of the shooting.[2] In the video, Appellant is seen inside Adan's Market purchasing something when the victim enters the store. *See* Video at timestamp 21:29:19. Appellant exits the store two seconds later, 21:29:21, and the victim exits moments after that, at 21:29.33. The video then displayed images from a camera placed outside the next-door A+ Childcare Center, which showed the victim getting on his bike and Appellant, slightly behind the victim and without any observable

---

[2] The parties supplemented the certified record with Commonwealth's Exhibit 35, a copy of the merged surveillance video depicting Appellant and the victim both inside and outside Adan's Market, as well as the shooting which occurred in front of the A+ Childcare Center. *See* Stipulation Order with DVD, 2/14/24.

interaction between the two parties, pulling his weapon and shooting the victim in the head.[3] **See** Video at approximate timestamp 21:29.45.

The defense of imperfect self-defense "is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life.  All other principles of justification under 18 Pa.C.S. § 505 must [be satisfied to prove] unreasonable belief voluntary manslaughter." **Commonwealth v. Tilley**, 595 A.2d 575, 582 (Pa. 1991).  "Thus, for example, if [Appellant] was not free from fault, neither self-defense nor imperfect self-defense is a viable defense." **Sepulveda**, 55 A.3d at 1124–25.

Here, based upon the objective evidence, we would conclude that Appellant was the aggressor.  Appellant shot the victim in the back of the head while the victim was looking away and getting on his bike to leave.  While the video does not display the entire interaction, there is no indication of any words exchanged as testified to by Appellant; the victim does not appear to even acknowledge that Appellant is nearby.  Thus, it appears to be an unprovoked attack.  As such, imperfect self-defense is not an available defense for Appellant.  **Sepulveda**, **supra.**

Moreover, Appellant could have retreated from the incident; the video demonstrates that the victim was unaware of Appellant's presence and

_____

[3] The trial court characterized the shooting as being "akin to an execution style murder," and described its view of the video as establishing that the victim was not even looking at Appellant when Appellant pulled out his gun, turned on the victim from behind, and shot him directly in the back of the head.  TCO at 7; N.T., 3/6/23, at 121.  After review, we agree with the trial court's characterization of the events depicted in the video.

Appellant could have walked away from the area. For this additional reason, this is not a case involving justifiable force. *Tilley*, 595 A.2d at 581-82 (finding that imperfect self-defense was not appropriate where the defendant was the aggressor and not free from fault in provoking the actions which resulted in the shooting, and, additionally, the defendant also violated a duty to retreat or avoid danger). Thus, even if this issue had been preserved for appeal, Appellant would not find relief.

In his second issue, Appellant suggests his aggregate sentence of twenty-three and one-half (23.5) to forty-seven (47) years' incarceration was unduly harsh and manifestly excessive in that the sentencing court failed to account for "the significant effect" of Appellant's youth. Rather than focusing upon Appellant as an individual, he claims, the court instead focused on the scourge of gun violence in the community and the court's stated policy regarding sentencing in gun cases. Brief for Appellant at 28.

Preliminarily, we note that sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Lawrence*, 313 A.3d 265, 285 (Pa. Super. 2024). In this context, an abuse of discretion requires the sentencing court to have ignored or misapplied the law, otherwise acted with manifest unreasonableness, or made its decision while exhibiting partiality, prejudice, bias, or ill-will; a sentence will be affirmed unless the sentencing court's determination suffers from such a lack of support so as to be clearly erroneous. *Id.*

Appellant challenges the discretionary aspects of his sentence. There is no absolute right to appeal the discretionary aspects of a sentence. *Commonwealth v. Mouzon*, 812 A.2d 617, 621 (Pa. 2002).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Morrobel*, 311 A.3d 1153, 1156 (Pa. Super. 2024) (citation and internal quotation marks omitted). Moreover, objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003).

In this case, Appellant timely filed a notice of appeal on August 7, 2023. Appellant has also included a section entitled "Concise Reasons to Allow Appeal of Sentence" in his brief. Brief for Appellant at 17. Although these two requirements have been met, this issue was not properly preserved at sentencing or via a post-sentence motion. In the post-sentence motion filed June 14, 2023,[4] Appellant raised his sentencing claim as follows: "On

---

[4] We note trial counsel was granted leave to withdraw his representation at the conclusion of the sentencing hearing, and newly appointed counsel filed the statement of errors about a week after his appointment. Counsel's post-sentence motion requested leave to file a supplemental motion after receipt of transcripts, but no such document appears in the certified record.

information and belief, the Court's imposition of the aforementioned sentence was unreasonable, unduly harsh, and an abuse of the [c]ourt's discretion." Post-Sentence Motion, 6/14/23, at unnumbered page 3. Unlike in his brief, Appellant did not specifically assert that the trial court erred by failing to account for his youth, nor did he argue that youthful offenders generally are "different than adult offenders." Brief for Appellant at 30. Because Appellant did not aver that the court failed to properly account for his youth while imposing a standard-range sentence in the post-sentence motion, this argument is waived. *See Commonwealth v. Griffin*, 65 A.3d 932, 936 (Pa. Super. 2013) ("[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.") (citation omitted).

In any event, even if we reviewed the issue on its merits, we would not find that the court abused its ample sentencing discretion. The trial court reviewed a pre-sentence report, the sentencing guidelines, and testimony and letters from the victim's family prior to imposing sentence. N.T., 6/5/23, at 4-5.[5] When the sentencing court has the benefit of a pre-sentence investigation report, it is presumed to be aware of all relevant information

_____

[5] The sentencing hearing transcript in the certified record is dated 6/5/21; this is clearly a typographical error as the sentencing hearing occurred in June of 2023.

pertaining to Appellant's character and to have weighed those considerations along with appropriate mitigating statutory factors. ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super 2010). The trial court explained its sentencing decision in the Rule 1925(a) opinion, as follows:

> The record in this case supports the sentence imposed by this [c]ourt. The sentence imposed at the homicide count was within the standard range of the sentencing guidelines. The sentence imposed at the firearm count was within the aggravated range. Additionally, this [c]ourt considered the presentence report as noted at the beginning of the sentencing proceeding. The victim in this case was 17 years old. His murder was senseless. [Appellant] was 18 years old when he murdered the victim. This [c]ourt considered [Appellant]'s prior record that, while not extensive, did include a juvenile adjudication for the unlawful possession of a firearm and for stealing a vehicle. Though young, [Appellant] had already began developing a pattern of engaging in criminal conduct. [Appellant] knew that his possession of the firearm in this case was illegal and it was the second time he was charged with the illegal possession of a firearm. He took his criminal behavior to a new level when he used the illegally possessed firearm to murder an innocent victim. [Appellant] shot at [the victim] five times from behind as [the victim] was looking away. The homicide of [the victim] was an execution style murder. [Appellant] refused to cooperate with the probation office during the presentence investigation process. Based on the totality of the circumstances, this [c]ourt believes [Appellant] is a danger to the community and does not ackowledge [*sic*] the seriousness of his conduct. [Appellant]'s prior firearms case did not dissuade [Appellant] from illegally possessing another firearm and then using that firearm to commit murder. This court imposed a consecutive sentence relative to the firearm conviction because [Appellant] not only unlawfully possessed the firearm, he discharged the firearm and used it to take someone's life. This [c]ourt considered [Appellant's] rehabilitative needs, protection of the public, deterring [Appellant] from engaging in future similar conduct, deterring the pubic [*sic*] from committing such crimes, retribution and the impact on the victim.

- 13 -

TCO at 11. We agree with the trial court's characterization of the sentence: "The sentence imposed in this case was not unduly harsh and properly reflected [Appellant's] culpability in this case." *Id*. Under the circumstances of this case, the sentence is not an abuse of discretion.

We write further only to note our disapproval with the trial court's seeming reliance upon an improper factor in imposing sentence on the firearms charge. During the sentencing hearing, the sentencing court stated:

> It's been my policy for a long time, for years, many years, that someone who carries a gun illegally and who shoots it is sentenced to the maximum penalty under that statute, which is 3 ½ to 7 years.

N.T., 6/5/23, at 34.[6] "A colorable claim of a blanket sentencing policy raises a substantial question whether the sentence violates the Sentencing Code, which requires sentences tailored to each case." ***Commonwealth v. Mola***, 838 A.2d 791, 793 (Pa. Super. 2003).

> The philosophy of indeterminate or individualized sentencing was explicitly recognized by the Pennsylvania Legislature early in this century. Courts are not permitted to mete out punishment based on the mere fact of the crime. On the contrary, sentencing must result both from a consideration of the nature and circumstances of the crime as well as the character of the defendant.

***Commonwealth v. Luketic***, 162 A.3d 1149, 1160 (Pa. Super. 2017) (citing ***Commonwealth v. Devers***, 546 A.2d 12, 13 (Pa. 1988) (cleaned up)).

While we acknowledge that the trial court should not have considered a "blanket policy" in imposing Appellant's sentence, Appellant is not entitled to

---

[6] The trial court has since retired from the Court of Common Pleas of Allegheny County.

relief. First, the issue regarding the trial court having a stated policy regarding sentencing in firearms cases was not raised in the statement of errors. Thus, it is waived. Pa.R.A.P. 302(a). Moreover, while the trial court violated a stated policy regarding the imposition of *individualized* sentences, the court further explained that it found the 3½ to 7 year sentence to be appropriate under the facts of this case because Appellant used the weapon to kill someone, and he had a juvenile record in which he was adjudicated for, in part, gun possession. N.T., 6/5/23, at 34-35. The trial court also had the benefit of a presentence investigation report. *Id*. at 4. Where a sentencing judge has the benefit of a presentence investigation report, it is presumed that he is aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. ***Commonwealth v. Boyer***, 856 A.2d 149, 154 (Pa. Super. 2004). Accordingly, had this issue been properly preserved for review, we would have concluded that there was no abuse of discretion here.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/11/2024