J-A10037-21

2021 PA Super 124

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES WROTEN | : | No. 3167 EDA 2018 |

Appeal from the Order Entered October 2, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0013240-2018

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.*

OPINION BY COLINS, J.:                                    **FILED JUNE 17, 2021**

The Commonwealth appeals from the order entered in the Court of Common Pleas of Philadelphia County ("trial court") dismissing the refiled charges of simple assault, official oppression, and harassment[1] against Appellee, Charles Wroten. We reverse the trial court's order and remand for trial.

This matter relates to a February 15, 2018 incident that occurred at 30th Street Station in Philadelphia involving Appellee, an on-duty, uniformed officer with the Amtrak Police Department, and Darrin Rogers, a train commuter at the station.  At approximately 4:15 a.m. on the date in question, Appellee entered one of the men's bathrooms at the station and ordered everyone present to exit so that cleaning staff could clean the bathroom.  Rogers was

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2701(a), 5301(1), and 2709(a)(1), respectively.

one of the individuals in the bathroom at this time. The Commonwealth alleges that, after escorting Rogers out of the bathroom, Appellee pushed Rogers into a corner, punched him in the face, and then told him never to return to the station.

At the July 26, 2018 preliminary hearing in the Philadelphia Municipal Court, Rogers testified that he entered a bathroom stall at the station prior to catching his 4:47 a.m. train to Jenkintown when he heard someone say that the bathroom was closed and everyone inside had to exit. N.T., 7/26/18, at 6, 10. Rogers stated that he responded by saying that he had just sat down and he would exit the stall in a minute. *Id.* When Rogers exited, he realized that the individual who had ordered him out was a police officer, who he identified at the preliminary hearing as Appellee. *Id.* at 6-7, 9. Appellee told him again to leave the bathroom, but Rogers insisted that he needed to wash his hands. *Id.* at 7. When Rogers attempted to use the sink, Appellee grabbed him and told him he was under arrest. *Id.* at 7-8.

Appellee then led Rogers out of the bathroom, took him down the hallway, and pushed him through a door. *Id.* at 8. At that point, according to Rogers, Appellee "threw me against the wall and he punched me in my mouth. And I hit my head against the wall when he did it." *Id.* Rogers stated that he had a "busted lip" and was bleeding from his mouth and his head was hurting for the rest of the day from the impact with the wall. *Id.* at 10, 19.

- 2 -

Rogers stated that, once Appellee told him he was under arrest, he kept quiet and did not say anything further. *Id.* at 9. Following the punch, Appellee did not place Rogers into custody but instead:

> He pushed me out the door and told me to get the F out the station. I said I got to catch the train, my train to go to work. He said go fucking downtown to catch the train from now on; if I catch you in here, I'm going to lock you up.

*Id.* at 9-10. After he was thrown out of the station, Rogers waited to calm down, then called his wife and asked her to come to 30th Street Station to be with him while he filed a complaint. *Id.* at 10.

Surveillance video footage from cameras in the station was played at the preliminary hearing during Rogers' testimony. *Id.* at 7-8. At the conclusion of the hearing, the municipal court dismissed all of the charges against Appellee. *Id.* at 22.

On August 2, 2018, the Commonwealth filed a notice that it was refiling the charges in the trial court. The trial court held a hearing on October 2, 2018, at which the Commonwealth presented the notes of testimony from the preliminary hearing, as well as the surveillance video shown at the prior hearing. In addition, the Commonwealth presented the testimony of Sergeant McKenna of the Amtrak Police Department, who was Appellee's supervisor at the time of the incident. Sergeant McKenna testified in relevant part that he had reviewed the surveillance video of the incident and he would characterize it as "[l]evel two . . . [d]isruptive behavior" under the Amtrak Police Department's use-of-force guidelines. N.T., 10/2/18, at 6-7. Sergeant

McKenna stated that in cases where an officer uses force, the officer is required to fill out a written use-of-force form as soon as possible explaining his or her reasoning for using the force. *Id.* at 7-8. Sergeant McKenna stated that Appellee did not complete the form as he was required to do and that the force used in this incident was not consistent with Amtrak policy. *Id.* at 8-9.

Following the hearing, the trial court entered an order denying the Commonwealth's notice to refile and dismissed the charges. In assessing the evidence presented by the Commonwealth, the trial court found that Rogers' testimony was at times contradictory and that the surveillance video "did not provide the full picture [of what happened] and had no audio." Trial Court Opinion, 3/2/20, at 4. The court further noted that the Commonwealth did not present evidence that Appellee "had a trait or habit of using force resulting in complaints" or that he acted outside of his duty as a police officer. *Id.* The court thus concluded that it was "unable to determine the exact events and occurrences that led to the use of force" and therefore the Commonwealth did not prove a *prima facie* case as to any of the charged crimes. *Id.* This timely appeal followed.[2]

The Commonwealth raises the following issue for our review:

> Did the lower court err in denying the Commonwealth's motion to refile simple assault, official oppression, and harassment charges against [Appellee] based on improper deference to the municipal

_____

[2] The Commonwealth filed its statement of errors complained of on appeal on November 16, 2018 pursuant to Pa.R.A.P. 1925(b), and the trial court entered an opinion on March 2, 2020.

court judge's decision and explicit weight and credibility determinations where the evidence, when viewed in the proper light and accepted as true, proved a *prima facie* case that [Appellee] committed these crimes.

Commonwealth's Brief at 4.

Prior to reaching the Commonwealth's appellate arguments, we must first address the claim by Appellee that the certified record lacks competent evidence that would have established a *prima facie* case as to the three charges. Appellee asserts that while the transcript of the Municipal Court preliminary hearing and the 30th Street Station surveillance video were marked by the Commonwealth's attorney at the refile hearing before the trial court, neither were moved into evidence. Therefore, Appellee argues that the notes of Rogers' testimony and the video were not properly before the trial court nor are they before this Court on appeal. In addition, Appellee avers that the trial court could not consider the notes of testimony as it was hearsay evidence and the Commonwealth did not show that Rogers was unavailable at the refile hearing as required to admit former testimony under Rule of Evidence 804. **See** Pa.R.E. 804(a), (b)(1). Relying on **Commonwealth v. McClelland**, 233 A.3d 717 (Pa. 2020), Appellee argues that Rogers' hearsay testimony was therefore not sufficient for the Commonwealth to prove its *prima facie* case.[3]

_____

[3] Appellee also argues that this Court may not consider the 30th Street Station surveillance video based on the fact that it does not appear in the certified record and the Commonwealth, as the appellant here, bore the responsibility for ensuring the completeness of the record certified by the trial court. **See**
*(Footnote Continued Next Page)*

At the beginning of the refile hearing in the trial court, the following exchange took place:

[Assistant District Attorney ("ADA")]: . . . with the Court's permission?

THE COURT: Yes.

[ADA]: I filed a motion, refiled this motion, sent Your Honor a copy of the notes and the video that was shown in the [Municipal Court] courtroom. I'd just ask that they be -- I know Your Honor's seen the notes, read the notes and seen the video. So I just ask that they be marked C-1 and C-2.

THE COURT: All right. You want C-1 for the notes?

[ADA]: And C-2 for the video.

THE COURT: Okay. C-1 is going to be the notes of testimony, that's 7/26/18. And C-2 will be the video.

[ADA]: Which is two short video clips --

THE COURT: Okay. And then we --

[ADA]: Which [defense counsel] has seen and I sent a copy.

N.T., 10/2/18, at 3-4.

---

Pa.R.A.P. 1921, Note. However, upon application of the Commonwealth, this Court entered an order directing the trial court to certify and transmit a supplemental record containing the video. *See* Pa.R.A.P. 1926(b)(1) ("If anything material to a party is omitted from the record by error, breakdown in processes of the court, or accident or is misstated therein, the omission or misstatement may be corrected . . . by the trial court or the appellate court upon application or on its own initiative at any time; in the event of correction or modification by the trial court, that court shall direct that a supplemental record be certified and transmitted if necessary[.]"). After the conclusion of briefing in this appeal, the trial court transmitted a supplemental certified record consisting of a thumb drive that contained the surveillance video footage submitted to the trial court. Therefore, the Commonwealth complied with its obligation with respect to the certified record, and the surveillance video is properly before this Court on appeal.

When hearing argument at the refile hearing on whether the charges against Appellee should be reinstated, the trial court directed counsel to "just focus on what we have that supports or doesn't support the fact that [the charges were] discharged" in the Municipal Court. *Id.* at 15. The ADA and defense counsel then each referenced Rogers' preliminary hearing testimony and the contents of the surveillance video in support of their respective positions. *Id.* at 18-23. In its Rule 1925(a) opinion, the trial court noted what the court deemed to be deficiencies in Rogers' testimony and the surveillance video and explained that it was dismissing the charges against Appellee because "[t]he evidence [that the] Commonwealth presented at the preliminary hearing was insufficient to meet the *prima facie* requirement." Trial Court Opinion, 3/2/20, at 4.

While the ADA did not specifically move the preliminary hearing notes of testimony and surveillance video into evidence, we do not deem this omission as necessitating the exclusion of this evidence from the record. It is apparent from the trial court's statements at the hearing that it accepted these items into evidence and considered them to be part of the record for the purpose of its analysis. We note that, while Appellee now claims that these documents are *dehors* the record, his counsel explicitly relied upon them at the refile hearing to argue that the Commonwealth had not met its burden of establishing a *prima facie* case. Moreover, at no point during the refile hearing did defense counsel lodge an objection to the surveillance video or notes of testimony, state that he had not had an opportunity to review these items, or

argue to the trial court that it could not base its decision on this evidence because they were not part of the record. In making the determination that these items are part of the certified record in this appeal, we are mindful of the relaxed rules of evidence attendant to preliminary hearings and other pre-trial criminal proceedings. **See** Pa.R.E. 101, Comment ("Traditionally, our courts have not applied the law of evidence in its full rigor in proceedings such as preliminary hearings . . ."); **accord** Pa.R.Crim.P. 542, Comment (relating to preliminary hearings generally); Pa.R.Crim.P. 1003, Comment (relating to preliminary hearings in Philadelphia Municipal Court).

Furthermore, we disagree with Appellee that Rogers' testimony cannot support a *prima facie* determination based on the fact that it was not admitted under a hearsay exception. It is well-established that where the Commonwealth seeks to establish a *prima facie* case against the accused after charges were dismissed at the preliminary hearing, the Commonwealth may proceed "with the same evidence presented at the first hearing or with additional evidence." **Commonwealth v. Carbo**, 822 A.2d 60, 67 (Pa. Super. 2003) (*en banc*), **abrogated on other grounds by Commonwealth v. Dantzler**, 135 A.3d 1109, 1112 n.5 (Pa. Super. 2016) (*en banc*); **see also Dantzler**, 135 A.3d at 1112; **Commonwealth v. Claffey**, 80 A.3d 780, 789 (Pa. Super. 2013). Pursuant to Rule of Criminal Procedure 542, the Commonwealth may establish a *prima facie* case at a preliminary hearing through hearsay evidence, "whether written or oral." Pa.R.Crim.P. 542(E), Comment; **see also** Pa.R.Crim.P. 1003, Comment (relating to preliminary

hearings in Philadelphia). However, as our Supreme Court recently held in *McClelland*, "hearsay **alone** is insufficient to establish a *prima facie* case at a preliminary hearing." 233 A.3d at 733 (emphasis added).

The parties have not cited any caselaw to this Court on the issue of whether, if the Commonwealth chooses to use the "same evidence presented at the first hearing," *Carbo*, 822 A.2d at 67, it may simply rely on the transcript of the first hearing or whether it must either present the same witnesses for live testimony at the second hearing or submit the transcript pursuant to a hearsay exception.[4] Even assuming the latter to be so, however, Appellee did not object to the inclusion of the notes of testimony in the evidentiary record at the refile hearing and therefore there is no basis for the exclusion of the notes from the record. *See* Pa.R.E. 103(a)(1) (party claiming error in admission of evidence must object and state specific grounds for objection); *Commonwealth v. Radecki*, 180 A.3d 441, 455 (Pa. Super. 2018) (failure to raise contemporaneous objection waives issue on appeal). Furthermore, *McClelland* is not implicated here as the Commonwealth did not rely "solely" on the transcript of Rogers' testimony at the refile hearing,

---

[4] *But cf. Commonwealth v. Perez*, ____ A.3d ____, No. 9 EAP 2020 (Pa. filed April 29, 2021), slip op. at 3 (noting that at the outset of the refile hearing the court of common pleas stated that "it had 'read the notes of testimony' from the first preliminary hearing" and then heard testimony from additional witnesses) (citation omitted); *Liciaga v. Court of Common Pleas of Lehigh County*, 566 A.2d 246, 247 (Pa. 1989) (court of common pleas correctly concluded that a district justice erred in finding that a *prima facie* case was not established based "upon [the court of common pleas'] review of the notes of testimony of the preliminary hearing").

but it also presented the surveillance video footage as well as the testimony of Sergeant McKenna. 233 A.3d at 735.

Turning to the merits of this appeal, we observe that the evidentiary sufficiency of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Perez**, ____ A.3d ____, No. 9 EAP 2020 (Pa. filed April 29, 2021), slip op. at 16-17. The preliminary hearing is not a trial and serves the principal function of protecting the accused's right against an unlawful arrest and detention. **Id.** at 17. At a preliminary hearing, the Commonwealth bears the burden of proving the *prima facie* case, which is met when it "produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense." **Commonwealth v. Montgomery**, 234 A.3d 523, 533 (Pa. 2020) (citation omitted); **see also** Pa.R.Crim.P. 542(D) ("At the preliminary hearing, the issuing authority shall determine from the evidence presented whether there is a *prima facie* case that (1) an offense has been committed and (2) the defendant has committed it."). "The evidence supporting a *prima facie* case need not establish the defendant's guilt beyond a reasonable doubt, but must only demonstrate that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to proceed to a jury." **Montgomery**, 234 A.3d at 533.

In reviewing the determination of whether the Commonwealth met its burden of establishing a *prima facie* case for a charged crime, "the trial court

is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime." ***Commonwealth v. Karetny***, 880 A.2d 505, 513 (Pa. 2005). "Hence, we are not bound by the legal determinations of the trial court." ***Dantzler***, 135 A.3d at 1112. Furthermore, it is inappropriate for the trial court to make weight or credibility determinations when assessing whether the Commonwealth established a *prima facie* case. ***Perez***, slip op. at 17.

"[I]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect [at a preliminary hearing], and the evidence must be read in the light most favorable to the Commonwealth's case." ***Id.*** at 18 (citation omitted). "The use of inferences is a process of reasoning by which a fact or proposition sought to be established is deduced as the logical consequence from the existence of other facts that have been established." ***Id.*** (citation omitted). "The 'more-likely-than-not' test, must be applied to assess the reasonableness of inferences relied upon in establishing a *prima facie* case of criminal culpability." ***Id.***

Upon review, we first observe that the trial court did not apply the correct standards to its review of the question of whether the Commonwealth met its *prima facie* burden at the preliminary hearing stage. In finding that Rogers' testimony was "contradictory[] at times" and that the evidence only amounted to a "he said she said" case, Trial Court Opinion, 3/2/20, at 4, the trial court improperly based its determination on the weight and credibility of

the Commonwealth's evidence, which are not appropriate areas of analysis at the preliminary hearing stage. **Perez**, slip op. at 17. Furthermore, while the trial court faulted the Commonwealth for not showing that Appellee had a "trait or habit" of using excessive force or that he was acting "outside of his duty as a police officer," Trial Court Opinion, 3/2/20, at 4, proof of these facts were not required elements of any of the charged crimes, and therefore these factors were irrelevant at the preliminary hearing stage. **See Karetny**, 880 A.2d at 513 (stating that a trial court has "no discretion" in determining whether the Commonwealth made a *prima facie* showing of the elements of the charged crimes). Finally, to the extent the trial court found the evidence against Appellee lacking based on the absence of corroborating witnesses or video of the entire sequence of events, the trial court did not view the evidence "in the light most favorable to the Commonwealth and instead improperly viewed it in the light most favorable to [A]ppellee." **Perez**, slip op. at 19-20 (holding that this Court erred by overlooking evidence that the defendant thrust his arm towards the victim moments before the victim started bleeding profusely from the neck and instead drawing an inference in favor of the defendant that one of the other individuals present may have stabbed the victim).

By contrast, on our review of the evidence presented below, we conclude that the Commonwealth established a *prima facie* case as to each of the three charges against Appellee. With respect to the simple assault charge, an individual is guilty of this offense if he "attempts to cause or intentionally,

- 12 -

knowingly or recklessly causes bodily injury to another." 18 Pa.C.S. § 2701(a)(1). "The Commonwealth need not establish the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury." *Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa. Super. 2012). "This intent may be shown by circumstances, which reasonably suggest that a defendant intended to cause injury." *Id.*

"Bodily injury" is defined by statute as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. Thus, injuries that are "trivial in nature," "noncriminal contact resulting from family stress and rivalries," or a "customary part of modern day living" do not satisfy this element. *Commonwealth v. Smith*, 206 A.3d 551, 559 (Pa. Super. 2019) (citations omitted). "The existence of substantial pain may be inferred from the circumstances surrounding the use of physical force even in the absence of a significant injury." *Commonwealth v. Ogin*, 540 A.2d 549, 552 (Pa. Super. 1988) (*en banc*). We have held that an individual who aggressively grabs the arm of another and pushes her against wall causes bodily injury, even though the victim did not require medical attention or miss work as a result and only sustained bruises that lasted a few days. *In re M.H.*, 758 A.2d 1249, 1252 (Pa. Super. 2000). We have likewise held that a punch to the face that broke the victim's glasses and caused pain for several days caused a bodily injury. *Commonwealth v. Richardson*, 636 A.2d 1195, 1196 (Pa. Super. 1994). Similarly, we have found that a deliberate punch

- 13 -

with a closed fist resulting in "slight swelling and pain" was a bodily injury. ***Commonwealth v. Marti***, 779 A.2d 1177, 1181-82 (Pa. Super. 2001).

Here, Rogers testified that, after Appellee removed him from the station bathroom, Appellee "took me down the hallway and pushed me through the door" and then "threw me against the wall," in spite of the fact that Rogers was not resisting. N.T., 7/26/18, at 8-9. According to Rogers, Appellee then "punched me in my mouth[, a]nd I hit my head against the wall when he did it." ***Id.*** at 8. The punch caused Rogers to bleed from a "busted lip" and caused pain in his head from the impact with the wall. ***Id.*** at 10, 19.[5] In addition, Sergeant McKenna of the Amtrak Police Department stated that his review of the surveillance video showed that Appellee used "[l]evel two" force against Rogers, which was inconsistent with Amtrak policy. N.T., 10/2/18, at 6-9.

We conclude that the Commonwealth demonstrated probable cause that Appellee committed a simple assault. The evidence shows that Appellee intended to cause bodily injury by pushing him into a corner and punching him in the face. 18 Pa.C.S. § 2701(a)(1); ***Martuscelli***, 54 A.3d at 948. Furthermore, the Commonwealth presented *prima facie* evidence that Appellee caused "bodily injury" to Rogers by causing him to bleed from his

---

[5] We note that while the surveillance video was not required to substantiate the charges against Appellee, we have reviewed the video and found it consistent with Rogers' account that Appellee pushed him through a door and then into a corner, Appellee then struck Rogers in the face, and Rogers did not visibly resist Appellee.

mouth and pain in his head. *Cf. Marti*, 779 A.2d at 1181; *Richardson*, 636 A.2d at 1196. A fact-finder could reasonably infer from Rogers' testimony about the pain he experienced that his injuries were not "trivial in nature" or a "customary part of modern day living." *Smith*, 206 A.3d at 559 (citations omitted). In any event, even if Rogers were not found to have suffered bodily injury, the Commonwealth demonstrated probable cause that Appellee "attempt[ed] to cause . . . bodily injury to" Rogers by punching him in the mouth. 18 Pa.C.S. § 2701(a)(1); *see Richardson*, 636 A.2d at 1196-97 (evidence that the appellant approached victim, yelled for him to "get out of here," and struck the victim in the face was sufficient to show that the appellant specifically intended to assault the victim and therefore he attempted to cause bodily injury under the simple assault statute).

We likewise find that the Commonwealth demonstrated a *prima facie* case that Appellee committed the offense of official oppression. Under the relevant sub-section of the statutory definition of the offense:

> A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits [official oppression] if, knowing that his conduct is illegal, he . . . subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights.

18 Pa.C.S. § 5301(1).

"The evil sought to be prevented by the law against official oppression is the unlawful abuse of the power of public officials." *Commonwealth v. Checca*, 491 A.2d 1358, 1366 (Pa. Super. 1985). "The statute was broadly

drafted to include all opportunities for oppressive use of official power" and applies to "numerous situations wherein an official engages in wrongdoing while acting in his official capacity," including "aggressive action against the individual." *Id.* at 1366-67. We have held "as a general rule that a police officer in uniform is cloaked with the authority of his office; and that actions taken by him which constitute mistreatment of another may fairly be said, within the terms of the statute, to be 'taking advantage' of that authority." *Commonwealth v. Stumpo*, 452 A.2d 809, 814 (Pa. Super. 1982) (footnote omitted).

"Mistreatment" under the statute is given its commonly understood meaning and "is equated with abuse." *Commonwealth v. Manlin*, 411 A.2d 532, 533 (Pa. Super. 1979). The use of the word "knowing" in the statute "is intended to include as an element of the crime that the actor be guilty of 'bad faith' in order to be guilty thereof"; in other words, "the accused must have been acting in 'bad faith' when he subjected the other to the proscribed activities." *Commonwealth v. Eisemann*, 453 A.2d 1045, 1048 (Pa. Super. 1982).

The preliminary hearing record reveals that Appellee, while on duty as a uniformed Amtrak police officer, informed Rogers that he was under arrest, forcibly moved him from the men's bathroom into a nearby hallway, pushed Rogers into a corner, and struck him in the face. N.T., 7/26/18, at 7-8. In addition, Appellee told Rogers that he would be arrested if he ever returned to 30th Street Station despite Rogers' remonstrations that he needed to use

the station for his regular work commute. *Id.* at 9-10. This evidence made out a *prima facie* case that Appellee, while taking advantage of his official authority, subjected Rogers to unlawful "mistreatment" and "aggressive action" and threatened an unlawful arrest if Rogers returned to the station in the future. 18 Pa.C.S. § 5301(1); ***Checca***, 491 A.2d at 1366. In addition, the evidence of Appellee's unwarranted strike of Rogers and the threat of arrest upon Rogers' return to the station allowed for the reasonable inference that Appellee was acting in bad faith. ***Cf. Stumpo***, 452 A.2d at 813-14 (sufficient evidence of official oppression conviction where officer blocked waitress from cleaning tables, yanked her bra strap, pulled her towards him and said "[a]ll right, bitch").

We additionally conclude that the Commonwealth showed probable cause that Appellee committed the harassment offense. "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same." 18 Pa.C.S. § 2709(a)(1). The intent element of this offense may be inferred from the totality of the circumstances. ***Commonwealth v. Cox***, 72 A.3d 719, 721 (Pa. Super. 2013). We have held that the physical contact requirement of the harassment statute is satisfied based on such varied conduct as the defendant picking up the victim and slamming her to the ground, ***see Commonwealth v. Kirwan***, 847 A.2d 61, 63-64 (Pa. Super. 2004), the defendant impeding the victim's path and poking him in his chest, ***see Commonwealth v. Lutes***,

793 A.2d 949, 961 (Pa. Super. 2002), and the defendant forcefully grabbing an 8-year old boy by his arm and neck and leading him home. **See Commonwealth v. Blackham**, 909 A.2d 315, 319-20 (Pa. Super. 2006).

The Commonwealth showed that, by "shov[ing]" Rogers into a corner and then "strik[ing]" him in the face with his hand, Appellee's conduct met the physical contact element of this offense. 18 Pa.C.S. § 2709(a)(1). Furthermore, an inference can be drawn from Appellee's actions that it was more likely than not that he had the "intent to harass, annoy or alarm" Rogers. 18 Pa.C.S. § 2709(a)(1); **Cox**, 72 A.3d at 721.

Accordingly, after our *de novo* review of the evidence, we conclude that the Commonwealth met its burden of establishing a *prima facie* case that Appellee committed each of the three charged offenses. Therefore, we reverse the trial court's October 2, 2018 order and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/17/2021