J-E03004-24

2025 PA Super 5

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
:
BRANDI SNOWDEN :
:
Appellant : No. 402 WDA 2023

Appeal from the Judgment of Sentence Entered March 8, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0005182-2022

BEFORE: LAZARUS, P.J., BOWES, J., OLSON, J., KUNSELMAN, J., NICHOLS,
J., MURRAY, J., KING, J., BECK, J., and LANE, J.

OPINION BY MURRAY, J.: **FILED: January 10, 2025**

Brandi Snowden (Appellant) appeals from the judgment of sentence

entered following her non-jury conviction of possession of a controlled

substance.[1] Appellant challenges the trial court's order denying her motion to

suppress physical evidence obtained after a search incident to arrest. After

careful review, we affirm.

The trial court summarized the evidence adduced at the suppression

hearing:

> On June 6, 2022[,] at about [8:15 p.m.], Officer [Ryan] Lawrence
> observed [Appellant] at a bus stop standing up, leaning on a trash
> can, nodding off. Officer Lawrence and Officer Kerr[2] approached
> [Appellant], let her know their observations and asked if she was
> okay. [Appellant] responded that she was extremely tired. Officer

---

[1] 35 P.S. § 780-113(a)(16).

[2] Officer Kerr's first name does not appear in the certified record.

Lawrence[,] concerned for [Appellant's] welfare[,] requested her [identification]. [Appellant] placed her purse on the ground and searched [it] for her [identification]. While [Appellant] searched her purse[,] Officer [Lawrence] saw syringes [in the purse] in plain view. [Appellant] tossed the syringes to the side in her purse. Officer Lawrence placed [Appellant] under arrest. [] Officer [Lawrence] initially testified that he then asked to search [Appellant's] purse and that she agreed. On cross[-examination], [] Officer [Lawrence] testified that the search of [Appellant's] purse was incident to [her] arrest. … Upon search of [Appellant's] purse, [] Officer [Lawrence] found [] syringes, 7 stamp bags of heroin[,] fentanyl marked "Popeye[,"] and a Ziploc bag containing methamphetamine. Upon retrieval of the suspected narcotics, [Appellant] was taken to the [police] station.

Trial Court Opinion, 7/7/23, at 2-3 (unpaginated; some capitalization modified; footnote added).[3]

On January 25, 2023, Appellant filed a pre-trial motion to suppress evidence. Appellant argued she was unreasonably seized by law enforcement. Motion to Suppress, 1/25/23, ¶ 3(o). The matter proceeded to an evidentiary hearing on February 2, 2023. Officer Lawrence testified as the sole witness.

Pertinently, at the suppression hearing, Appellant played a portion of Officer's Lawrence's body camera video (the video)[4] pertaining to the basis

_____

[3] The trial court did not, as required by Pa.R.Crim.P. 581(I), "enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(I). However, while a trial court's Pa.R.A.P. "1925(a) opinion is no substitute for the failure to make findings of fact and conclusions of law on the record at the conclusion of a suppression hearing[,]" our review is not impeded based on the facts set forth in the Rule 1925(a) opinion. **Commonwealth v. Grundza**, 819 A.2d 66, 68 n.1 (Pa. Super. 2003) (citing **Commonwealth v. Reppert**, 814 A.2d 1196, 1200 (Pa. Super. 2002)).

[4] We discuss whether we may consider the video in reviewing the merits of Appellant's appeal, *infra*.

for Officer Lawrence's search.  N.T., 2/2/23, at 13.  The following exchange

occurred:

> [Appellant's counsel:] And you stated on direct [examination] that you asked for [Appellant's] consent to search [her purse]?
>
> [Officer Lawrence:] Correct.
>
> Q. Do you recall on this date and time that you were wearing a body camera?
>
> A. Yes.
>
> Q. And you had body camera footage to produce in this case; correct?
>
> A. Right.
>
> Q. Your Honor, I'm going to be playing a portion of the [video] from that day.  Well, first, Officer, is this that [video]?
>
> A. Yes.
>
> ….
>
>> (Video is being played.)
>
> ….
>
> Q. Officer, after watching the [video], you would agree with me that you did not ask [Appellant] for consent to search [her purse]; correct?
>
> A. Correct.  It was [a] search incident to arrest at that point.
>
> Q. But that's not what you testified to on direct[ examination].
>
> A. I couldn't recall.  If I watch the [video] again, yeah.

*Id.* at 13-14. Appellant asked no further questions concerning the video, and did not move for its admission into evidence.[5]

Of the Commonwealth's three questions on redirect examination of Officer Lawrence, only one addressed the video. *Id.* at 15 (Officer Lawrence agreeing, "as we saw in the video, [Appellant] tried to deny knowledge of the needles in her purse when she saw them[.]"). Further, the Commonwealth argued during closing argument that "the video … is not evidence, it has not been admitted as evidence, so it cannot be considered …. The only evidence in the record[] is [Officer Lawrence's] testimony that was put forth by the Commonwealth[.]" *Id.* at 20.

The trial court denied Appellant's suppression motion on March 8, 2023. Order, 3/8/23. Following a stipulated bench trial, the trial court convicted Appellant of possession of a controlled substance. The trial court sentenced Appellant to nine months of probation on March 8, 2023. Appellant timely appealed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

On November 21, 2023, the parties filed a "Stipulation Order to Supplement Certified Record on Appeal" (Stipulation). The Stipulation referred to and attached a section of the video the parties agreed "was played

---

[5] Appellant only briefly mentioned the video during closing argument to the trial court. *See* N.T., 2/2/23, at 16-17 (Appellant's counsel stating, "We heard from [O]fficer [Lawrence] that [Appellant] stated she was tired. We saw [Appellant] in [the video]. It's not a crime to be tired.").

in open court at [Appellant's suppression hearing]." Stipulation, 11/21/23, at 1 (unpaginated). The Stipulation stated the video evidence "is necessary for appellate review and the ultimate resolution of this case." *Id.* at 2 (unpaginated). The Stipulation did not, however, aver that the video was properly admitted into evidence.[6]

On appeal, Appellant presents the following issue[7] for our review:

> Did the trial court err in denying suppression because police arrested [Appellant] without probable cause and, thereafter, conducted an unlawful search incident to arrest?

Appellant's Substituted Brief at 4 (capitalization modified).

Preliminarily,

> [a]n appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those

---

[6] In its brief, the Commonwealth maintains the Stipulation was not a concession that the video was properly admitted at the suppression hearing. Commonwealth's Substituted Brief at 16 n.5. Rather, the Commonwealth explains, "The [video] exists, and at least a portion of it was played during the suppression hearing; this alone makes it a part of the record on appeal, not unlike a statement uttered by a witness that is ultimately stricken by the trial court judge." *Id.* Based upon our review of the Stipulation, we agree with the Commonwealth that it has not conceded that we may consider the video on appeal, and reject Appellant's argument to the contrary. *See* Appellant's Brief at 11-12.

[7] In her Pa.R.A.P. 1925(b) concise statement, Appellant also claimed law enforcement "unreasonably seiz[ed Appellant] without reasonable suspicion of criminal activity." Concise Statement, 6/7/23, ¶ 10(a). This contention is not addressed in Appellant's brief and is, therefore, waived. *See In Interest of T.Q.B.*, 286 A.3d 270, 273 n.5 (Pa. Super. 2022) (holding that issues raised in a Rule 1925(b) concise statement that are not developed in the appellate brief are abandoned).

facts are correct.[8]  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous.  Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.  Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Prizzia*, 260 A.3d 263, 266 (Pa. Super. 2021) (citation omitted; footnote added).

Where a defendant files a motion to suppress evidence, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights."  Pa.R.Crim.P. 581(H); *see also id.*, cmt. (stating that the standard of proof is a preponderance of the evidence).  "Evidence obtained from an unreasonable search or seizure is inadmissible at trial." *Commonwealth v. Dunham*, 203 A.3d 272, 278 (Pa. Super. 2019) (citation omitted).

Initially, we consider whether our scope of review includes the video used to impeach Officer Lawrence.  Both the Commonwealth and the trial court

---

[8] Pertinently, "[w]hen the suppression court's specific factual findings are unannounced, … the appellate court should consider only the evidence of the prevailing suppression party … and the evidence of the other party" that remains uncontradicted.  *In Int. of M.W.*, 194 A.3d 1094, 1097 (Pa. Super. 2018) (quoting *Commonwealth v. Millner*, 888 A.2d 680, 685 (Pa. 2005)).

maintain this Court may not consider the video. **See** Commonwealth's Substituted Brief at 11-15; Trial Court Opinion, 7/7/23, at 5 (unpaginated) (stating, "the … video was never offered nor admitted into evidence.").

The Commonwealth emphasizes that Appellant failed to move for admission of the video into evidence. Commonwealth's Substituted Brief at 13. Further, the Commonwealth argues "the suppression[ ]hearing transcript gives no real indication that [Appellant] played the [video] for any purpose beyond demonstrating that [Appellant] never consented to the search of her purse[.]" **Id.** Finally, the Commonwealth argues that it timely objected to Appellant's characterization of the video as substantive evidence during closing argument. **See id.** (questioning, "when else would the prosecutor make such an objection other than after [Appellant] had rested, as it was only at that point that he knew that [Appellant] had not sought to admit the [video] into evidence?").

Appellant counters the video must be considered on appeal because 1) the Commonwealth "did not timely object to [Appellant] playing [the video] during cross-examination of Officer Lawrence"; 2) the Commonwealth "relied on" the video during redirect examination; and 3) case law supports the proposition that "a video that [is] played at trial but not formally admitted [is] part of the record." Appellant's Reply Brief at 3-4 (citing **Commonwealth v. Jones**, 271 A.3d 452, 456-57 (Pa. Super. 2021)).

"[E]xhibits that are merely marked for identification and submitted by the offering party do not constitute evidence on which a finder of fact can rely." **Jones**, 271 A.3d at 456 (citing **Dep't of Transp., Bureau of Driver Licensing v. Doyle**, 616 A.2d 201, 202 n.4 (Pa. Cmwlth. 1992), and **Denver Nursing Home v. Com., Dep't of Pub. Welfare**, 552 A.2d 1160, 1161-63 (Pa. Cmwlth. 1989)). Rather, "[i]t is fundamental and essential that, at trial, a document must be offered to and admitted by the court before it may be considered evidence…." **Dep't of Transp., Bureau of Driver Licensing v. McCrea**, 526 A.2d 474, 475 (Pa. Cmwlth. 1987);[9] **see also Commonwealth v. Duncan**, 314 A.3d 556, 567 n.7 (Pa. Super. 2024) (concluding that although a party marked notes of testimony as an exhibit for identification purposes, "[b]ecause those notes of testimony were never moved into the record, we cannot rely on their contents for purposes of our [] review." (citation omitted)).

Pennsylvania Rule of Evidence 103 provides, in relevant part, as follows:

**(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit … evidence only:

(1) if the ruling admits evidence, a party, on the record:

(A) makes a timely objection, motion to strike, or motion *in limine*; and

(B) states a specific ground, unless it was apparent from the context[.]

---

[9] Although this Court is not bound by decisions of the Commonwealth Court, such decisions may provide persuasive authority. **See Commonwealth v. Segarra**, 228 A.3d 943, 950 (Pa. Super. 2020) (citation omitted).

Pa.R.E. 103(a)(1).

Where a trial court admits evidence, Rule of Evidence 105 describes the procedure for limiting the use of evidence to its proper purpose:

> If the court admits evidence that is admissible against a party or for a purpose--but not against another party or for another purpose--the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly. The court may also do so on its own initiative.

Pa.R.E. 105.

In considering whether the video evidence is properly before us, we are guided by this Court's analysis in *Jones*, *supra*, upon which both the Commonwealth and Appellant rely. In *Jones*, we examined, as a matter of first impression, whether we could consider a surveillance video not admitted into evidence—but utilized extensively at trial—in ruling on a defendant's (Jones) sufficiency of the evidence challenge. *See id.* at 456.

The Commonwealth charged Jones with homicide and firearms offenses following a shooting at a bar in Allegheny County; the case proceeded to a non-jury trial. *See id.* at 455. As part of its case-in-chief, the Commonwealth "played video from the bar's surveillance system that showed the shooting and the events before and after the shooting." *Id.* Jones stipulated that the surveillance video was authentic, lodged no objection to the video being played, and cross-examined the witness who had secured the video concerning its contents. *See id.* "The Commonwealth did not move for admission of the video, but the trial court, the Commonwealth, and [Jones]

- 9 -

all treated the video as admitted evidence after the Commonwealth rested." *Id.* Jones called a witness in his defense, for whom Jones's counsel played portions of the video. *See id.* Additionally, Jones's counsel "argued in his closing argument that the video showed that [Jones] acted in self-defense." *Id.*

At the conclusion of trial, the trial court convicted Jones of third-degree murder and firearms offenses. *See id.* Jones filed a post-sentence motion in which he "again asserted that the video was evidence before the trial court that could be considered in ruling on the sufficiency of the evidence and noted, without objection, that the trial court relied on the video in reaching its verdict." *Id.* at 456.

On appeal, Jones challenged the sufficiency of the evidence, and argued "this Court [could not] consider the video recording … because the video was not admitted in evidence." *Id.* The parties filed a "Limited Joint Stipulation" stating, "the parties agree that the video was not formally admitted into evidence at trial and that [Jones] does not waive his contention that the video cannot be considered in ruling on the sufficiency of the evidence." *Id.* at 456 n.2.[10]

_____

[10] The "Limited Joint Stipulation," purporting to preserve Jones's claim that the Commonwealth did not properly admit the surveillance video, does not alter our conclusion in the instant appeal that the Commonwealth preserved its challenge to the video. As explained above, the Stipulation in the case at bar contained no concession that the video was competent evidence for the trial court's consideration.

In concluding the video was appropriate for review, we explained

> where the trial court, in fact, made a determination that the video was admissible before it was played, the video was in evidence and became part of the record once it was played without objection, even though no formal motion to admit it in evidence was made. Although it appears that there is no Pennsylvania precedent addressing this situation, courts in other jurisdictions have recognized that when a recording is played to the fact finder for its consideration, the recording is admitted in evidence and becomes part of the record even if no formal motion is made for its admission. *Cull v. Commonwealth*, 2000 WL 311169 at *3 (Va. App. Mar. 28, 2000) (holding that "[i]rrespective of any characterization made by the trial judge, the contents of the [video] were admitted into evidence when the jury viewed it"); *Kennebrew v. State*, 267 Ga. 400, 480 S.E.2d 1, 4 (1996) (defendant admitted evidence where he played [video] recording even though he did not move the recording into evidence).

*Id.* at 456-57 (footnote omitted); *see also Huber v. Etkin*, 58 A.3d 772, 780 n.8 (Pa. Super. 2012) (*en banc*) ("The decisions of courts of other states are persuasive, but not binding authority.").

We further concluded that Jones was "barred by waiver from contending that the video [could not] be considered." *Id.* at 457.

> [Jones] not only failed to object that the video was admitted and failed to object to the trial court's consideration of it before the trial court's verdict, he stipulated to the video's admissibility and used it in his case and in argument after the Commonwealth had rested.

*Id.* Significantly, "[a]t no time during trial, or even in his post[-]sentence motion, did [Jones] ever contend that the video was not part of the evidence before the trial court." *Id.*

Additionally, Appellant relies on *Commonwealth v. Wroten*, 257 A.3d 734 (Pa. Super. 2021), for the proposition that exhibits relied upon by the

parties and the trial court, but not formally admitted into evidence, are competent evidence for appellate review. *See* Appellant's Substituted Reply Brief at 8-9.

In *Wroten*, the Commonwealth sought to refile charges in the trial court, which had been dismissed by a magisterial district court. *Wroten*, 257 A.3d at 739. At the refile hearing, the Commonwealth marked as exhibits the preliminary hearing notes of testimony and a surveillance video (the exhibits). *See id.* at 740. Both the Commonwealth and Wroten extensively relied upon the exhibits in their arguments to the trial court. *See id.* At the conclusion of the hearing, the Commonwealth failed to formally move for the exhibits' admission into evidence. *See id.* at 741. Nevertheless, "[i]n its Rule 1925(a) opinion, the trial court noted what the court deemed to be deficiencies in [the officer's preliminary hearing testimony] and the surveillance video[,] and explained that it was dismissing the charges against [Wroten] …." *Id.*

In rejecting Wroten's argument that the exhibits could not be considered on appeal, the *Wroten* Court explained it was "apparent from the trial court's statements at the hearing that it accepted these items into evidence and considered them to be part of the record for the purpose of its analysis." *Id.* The *Wroten* Court further noted that Wroten "explicitly relied upon" the exhibits at the refile hearing, and did not

> lodge an objection to the surveillance video or notes of testimony, state that he had not had an opportunity to review these items, or argue to the trial court that it could not base its decision on this evidence because [the exhibits] were not part of the record.

*Id.* As a result, the Court determined the exhibits were appropriate for appellate review. *Id.*

Instantly, unlike *Jones*, the trial court did not determine that the video was admissible before it was played, and there was no stipulation that the video was authentic or admissible. Further, while both parties in *Jones* used the surveillance video to characterize the events it depicted, Appellant clearly, and successfully, utilized the instant video solely to undermine Officer Lawrence's testimony that he had obtained Appellant's consent to search her purse. We are unpersuaded by Appellant's claim that the prosecutor's fleeting and solitary reference to a statement Appellant made in the video constituted acquiescence to the video's admission into evidence. Moreover, unlike *Wroten*, where the trial court used unadmitted exhibits in the analysis set forth in its Rule 1925(a) opinion, the trial court in the instant case explicitly noted that the "video was never offered nor admitted into evidence." Trial Court Opinion, 7/7/23, at 5.

We are further unpersuaded by Appellant's claim that the Commonwealth waived its challenge to our consideration of the video. It is undisputed that Appellant failed to move for admission of the video into evidence. *See McCrea*, 526 A.2d at 475 ("It is **fundamental and essential** that, at trial, a document must be offered to and admitted by the court before it may be considered evidence…." (emphasis added)). While the Commonwealth did not object when Appellant initially played the video, the

prosecutor argued after the close of evidence "that the video and body cam footage is not evidence." N.T., 2/2/23, at 20; ***see also Green v. Green***, 69 A.3d 282, 286-87 (Pa. Super. 2013) (recognizing that "because the [marked] exhibit was not formally moved into evidence, [the appellant] did not have a corresponding opportunity formally to object"; but finding the appellant waived his claim that the trial court erred by considering the exhibit, where the appellant "did not object to its use at [the] time [of the hearing] **or in the following proceedings**." (emphasis added)).

Because Appellant failed to move for admission of the unmarked video, the Commonwealth was deprived of the opportunity to object to its admission or to request that it be limited to the purpose for which it was plainly used – impeachment. ***See***, N.T., 2/2/23, at 13-14 (Appellant utilizing the video solely to question Officer Lawrence concerning his misstatement of fact on direct examination). Based upon the foregoing, we do not consider the video in our consideration of the merits of Appellant's claim.

Having concluded the video is not within our scope of review, we consider Appellant's claim based upon the evidence of record.

The parties agree that Officer Lawrence was required to have probable cause to arrest Appellant and search her incident to arrest. Appellant's Substituted Brief at 15; Commonwealth's Substituted Brief at 10.

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief

that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a *probability*, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Martin*, 101 A.3d 706, 721 (Pa. 2014) (emphasis in original) (quoting *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009)); *see also In Int. of O.A.*, 717 A.2d 490, 495 (Pa. 1998) ("Where probable cause to arrest does not exist in the first instance, any evidence seized in a search incident to arrest must be suppressed." (citation omitted)).

"As a general rule, a warrant stating probable cause is required before a police officer may search for or seize evidence." *Commonwealth v. McMahon*, 280 A.3d 1069, 1072 (Pa. Super. 2022) (citation and quotation marks omitted). "Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." *Id.* (citation omitted). One such exception is a search incident to arrest. *Id.*; *see also Commonwealth v. Lutz*, 270 A.3d 571, 579-80 (Pa. Super. 2022) ("The search incident to arrest exception allows arresting officers, in order to prevent the arrestee from obtaining a weapon or destroying evidence, to search both the person arrested and the area within his immediate control." (emphasis and citation omitted)).

In examining the totality of the circumstances, it is well-established that

we must give due weight ... to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not

- 15 -

limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, **even a combination of innocent facts, when taken together, may warrant further investigation by the police officer**.

*Commonwealth v. Cunningham*, 287 A.3d 1, 11 (Pa. Super. 2022) (citation omitted; emphasis added). Further,

> [w]e do not review the evidence piecemeal, but consider the totality of the circumstances in assessing whether probable cause existed…. If the evidence supports the findings of the trial court, those findings bind us and we may reverse only if the suppression court drew erroneous legal conclusions from the evidence.

*Commonwealth v. El*, 933 A.2d 657, 660 (Pa. Super. 2007) (citation omitted).

Appellant argues her arrest was primarily based on Officer Lawrence's observation of a syringe in her purse. *See* Appellant's Substituted Brief at 15. She maintains the other factors the Commonwealth and trial court relied on in justifying her arrest did not establish probable cause. *See id.* at 22, 26-27; Appellant's Substituted Reply Brief at 12-16. In support, Appellant relies on *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021), and *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019), as establishing why possession of an otherwise lawful object, "without other *indicia* of illegal activity, does not establish probable cause of criminal activity." Appellant's Substituted Brief at 18.

In *Hicks*, the Supreme Court considered a claim involving possession of a concealed firearm. The *Hicks* Court concluded police cannot detain an individual merely based on possession of a concealed firearm in public. *Hicks*,

208 A.3d at 936. The Supreme Court criticized *per se* rules that obviate the government's obligation to establish reasonable, individualized suspicion:

> Unless a police officer has prior knowledge that a specific individual is not permitted to carry a concealed firearm, and absent articulable facts supporting reasonable suspicion that a firearm is being used or intended to be used in a criminal manner, there simply is no justification for the conclusion that the mere possession of a firearm, where it lawfully may be carried, is alone suggestive of criminal activity.

*Id.* at 937.

Subsequently, in **Barr**, the Supreme Court held "that the smell of marijuana may be a factor, but not a stand-alone one, in determining whether the totality of the circumstances established probable cause to permit a police officer to conduct a warrantless search of a vehicle." **Barr**, 266 A.3d at 28. The Supreme Court

> [e]mphasize[d] that the realization that a particular factor contributing to probable cause may involve legal conduct does not render consideration of the factor *per se* impermissible, so long as the factor is considered along with other factors that, in combination, suggest that criminal activity is afoot. … [**T**]**he totality-of-the-circumstances analysis encompasses the consideration of factors that may arguably be innocent in nature**.

*Id.* at 41-42 (emphasis added).

Here, the Commonwealth acknowledges possession of a syringe does not establish probable cause as a standalone factor, but counters that Officer Lawrence did not rely solely on his observation of syringes in Appellant's purse. **See** Commonwealth's Substituted Brief at 11. Instead, the Commonwealth argues Officer Lawrence properly relied on several factors to

support Appellant's arrest, including Appellant's: 1) presence "in a location known for its drug activity"; 2) "nodding off" at a bus stop; 3) effort to "conceal" the syringe in her purse; and 4) failure to explain why she possessed syringes.[11]  **Id.** at 19-20.

Both parties cite to the analogous case of **Commonwealth v. Bumbarger**, 231 A.3d 10 (Pa. Super. 2020), as supporting their respective positions.  Appellant's Substituted Brief at 25-26; Commonwealth's Substituted Brief at 21-23.  In **Bumbarger**, Trooper Shane Murarik (Trooper Murarik), who had prior encounters with the defendant, saw the defendant and confirmed he had an outstanding warrant for his arrest.  **See Bumbarger**, 231 A.3d at 13.  After conducting a traffic stop and taking the defendant into custody, Trooper Murarik spoke with the defendant's passenger, Roberta Sheaffer (the passenger), who was a known drug user.  **See id.** at 14.  Trooper Murarik believed the passenger was under the influence of a controlled

---

[11] We are not persuaded by the Commonwealth's last argument.  On cross-examination, Officer Lawrence agreed that he did not ask Appellant whether she had "any medical issues[,]" and testified, "[Appellant] probably saw that I saw the syringes and pushed them to the side.  So at that point I just detained [Appellant] and advised her [that] she was under arrest."  N.T., 3/8/23, at 12.  Because Officer Lawrence arrested Appellant immediately upon observing the syringes, the Commonwealth cannot rely on Appellant's silence as evidence in support of its probable cause analysis.  **See Commonwealth v. Krzan**, ___ A.3d ___, 2024 PA Super 207, *3 (Pa. Super. filed Sept. 12, 2024) ("[T]he prosecution may not use a defendant's decision to remain silent during the preliminary stages of a criminal investigation as substantive evidence." (citations omitted)).  Regardless, as discussed *infra*, the evidence presented at Appellant's suppression hearing was sufficient to establish probable cause supporting Appellant's arrest.

substance and asked her to step out of the vehicle. *See id.* As the passenger was exiting the vehicle, Trooper Murarik observed two syringes under the passenger seat. *See id.* Trooper Murarik conducted a probable cause search of the vehicle,[12] and recovered a firearm and methamphetamine. *See id.* at 14.

On appeal, the defendant challenged the trial court's denial of his suppression motion, following his convictions for drug and firearm offenses. *See id.* at 15. Relevantly, he claimed that law enforcement searched his vehicle without probable cause. *See id.* The defendant argued "the two syringes Trooper Murarik claimed he observed when he had the passenger step out of the vehicle did not possess an incriminating character that was immediately apparent…." *Id.* In concluding this claim lacked merit, this Court relied on the following relevant facts:

> Here, Trooper Murarik approached the passenger of the vehicle as part of the lawful stop. Trooper Murarik knew [the passenger], and knew of her drug use and sales history. [The passenger's] appearance reflected that she was under the influence of drugs. Moreover, when Trooper Murarik lawfully asked [the passenger] to exit the vehicle in accordance with the lawful stop, he observed drug paraphernalia in plain view. Accordingly, we conclude that Trooper Murarik did not unlawfully detain [the passenger] or ask her to exit the vehicle. Furthermore, given his observation of [the passenger's] appearance, his knowledge of [the passenger's] drug-use history, and the observation of the syringes, Trooper Murarik had reason to suspect criminal activity. Thus, Trooper Murarik had probable cause to search the vehicle.

---

[12] The **Bumbarger** case was decided prior to our Supreme Court's pronouncement in **Commonwealth v. Alexander**, 243 A.3d 177, 195 (Pa. 2020), that "warrantless vehicle searches require[] both probable cause and exigent circumstances."

*Id.* at 18 (citations and footnote omitted).

We further recognized "hypodermic syringes are specifically included in the definition of 'drug paraphernalia[,]'" and "the circumstantial evidence in this case regarding the syringes supports the conclusion that they were drug paraphernalia." *Id.* at 19 (citation omitted).

> Furthermore, the location and unsecured nature of the syringes on the floor of the vehicle were not consistent with use of the syringes for medical purposes. Moreover, [the passenger] appeared to be under the influence of drugs, and the syringes were in close proximity to her person in the vehicle. Upon having her attention directed to the syringes, [the passenger] did not indicate that the syringes were for medical use. Also, [the passenger] was known by Trooper Murarik to use and sell drugs. Given the totality of [the] circumstances, it was reasonable for Trooper Murarik to believe that these syringes were being used for a criminal purpose. Thus, discovery of these syringes **in connection with the other relevant factors suggesting illegal drug use** constituted probable cause to search the vehicle.

*Id.* (citations omitted; emphasis added).

Instantly, the trial court rejected Appellant's argument that Officer Lawrence conducted an unlawful search incident to arrest:

> [The trial court] find[s] that [] Officer[ Lawrence's] actions were reasonable, legal and proper in [his] approach to check on [Appellant] and to ask [Appellant] for identification. Once Officer Lawrence observed the syringes and [Appellant] toss them to the side in her purse, we look at the totality of the circumstances to determine whether probable cause exists to arrest. [The trial court] find[s] that [Appellant] was alone, standing up, nodding off, … at a bus stop in a high crime area[,] with syringes in her purse[,] which are known to be drug paraphernalia associated with the use of the narcotics that cause a user to nod. For these reasons, the facts in this case are distinguished from the facts in …. *Hicks*, 208 A.3d [at] 936 ….

Trial Court Opinion, 7/7/23, at 4 (unpaginated).

Our review confirms that the trial court's factual findings are supported by the record, and its legal conclusion is sound. *See Prizzia*, 260 A.3d at 266; *see also Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa. Super. 2019) ("It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." (citation omitted)).

At the suppression hearing, Officer Lawrence testified that he observed Appellant "nodding off" at a bus stop. N.T., 2/2/23, at 5. He elaborated on cross-examination that, prior to police engaging her, Appellant was leaning on a trash can for support. *Id.* at 11. Officer Lawrence testified that the area in which he interacted with Appellant was a "high drug area."[13] N.T., 2/2/23, at 7. He further testified that syringes like those found in Appellant's purse are commonly used for the injection of illegal drugs, and that he believed

---

[13] Appellant claims that the Court in *Barr*, *supra*, "found a neighborhood's 'characteristics' to be irrelevant to a probable cause analysis." Appellant's Substituted Brief at 23. This claim mischaracterizes the *Barr* holding, wherein the arresting officer "stated on at least two occasions that he conducted a probable cause search of the vehicle in question based upon the smell of marijuana." *Barr*, 266 A.3d at 44. In *Barr*, the defendant's presence in a high crime area was irrelevant, because "troopers simply stopped a vehicle for a minor traffic violation and then smelled marijuana." *Id.* at 44; *see also Commonwealth v. Joseph*, 34 A.3d 855, 863-34 (Pa. Super. 2011) ("[A] police officer's observance of a defendant's conduct [in] a 'high crime area' may, along with other factors, contribute to a finding of probable cause.") (citation omitted)). The *Barr* Court further noted, "the record [made] clear that [law enforcement] did not witness the occupants of the vehicle do anything suspicious…." *Id.*

Appellant attempted to move the syringes out of sight to conceal them. *Id.* at 7, 12; *see also Commonwealth v. Laird*, 988 A.2d 618, 627 (Pa. 2010) (indicating that concealment can constitute circumstantial proof of consciousness of guilt); *Commonwealth v. Jordan*, 212 A.3d 91, 97 (Pa. Super. 2019) (same).

This case is factually distinct from *Hicks* and *Barr*, which held the mere possession of a firearm in public, or the smell of marijuana, did not justify a search or seizure. The record in this case confirms that, like the trooper in *Bumbarger*, Officer Lawrence observed syringes in Appellant's purse "in connection with [] other relevant factors suggesting illegal drug use." *Bumbarger*, 231 A.3d at 19. The presence of syringes, combined with Officer Lawrence's observations of Appellant "nodding off," "leaning on" a trash can for support, and attempting to conceal the syringes, while in a high crime area, supplied Officer Lawrence with probable cause to arrest Appellant, and search her incident to arrest. N.T., 2/2/23, at 5, 7, 11, 12.

In view of the foregoing, we agree with the trial court that Appellant's arrest, under the totality of the circumstances, was supported by probable cause. *See Barr*, 266 A.3d at 41-42. Accordingly, Appellant's issue merits no relief.

Judgment of sentence affirmed.

Judges Bowes, Olson, Nichols, and King join the Opinion.

Judge Kunselman files a Concurring/Dissenting Opinion which P.J. Lazarus, Judge Beck, and Judge Lane join.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 1/10/2025